UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOES I, II, III and FRIENDS OF FARMWORKERS, INC. D/B/A JUSTICE AT WORK IN ITS CAPACITY AS EMPLOYEE REPRESENTATIVE,<br><br>    Plaintiffs,<br><br>EUGENE SCALIA, IN HIS OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF LABOR; OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, UNITED STATES DEPARTMENT OF LABOR,<br><br>    Defendants. | Case No.: _____ |

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM

"Jane Doe I," "Jane Doe II," and "Jane Doe III," (collectively, the "Worker Plaintiffs") are workers at Maid-Rite Steak Specialty Foods ("Maid-Rite"), a meatpacking plant (the "Plant") in Dunmore, PA. Based on Maid-Rite's complete failure to take basic precautions to protect its workers, Worker Plaintiffs fear serious physical harm or death from contracting COVID-19 at their worksite. Worker Plaintiffs filed an anonymous complaint with the Occupational Safety and Health Administration, United States Department of Labor ("OSHA") asking the agency to address imminent dangers at the Plant. Now, several months later— during which time OSHA has failed to take appropriate action—Worker Plaintiffs

seek to avail themselves of their judicial remedy under OSHA (which also allows workers to proceed anonymously) and ask the Court to compel OSHA to take action under 29 U.S.C. § 662(d) to protect them from the imminent danger they face each day at work. *See* Emergency Complaint, filed concurrently herewith.

Worker Plaintiffs seek to proceed under pseudonym due to fear of reprisal by their employer, including retaliatory firing, which would make them unable to support themselves and their families. This fear is not only reasonable, it is well-supported by their declarations and extensive objective evidence relating to the meatpacking industry. Worker Plaintiffs are aware of past retaliation at the Plant, *see* Ex. B ¶¶ 5-7, and retaliation against workers who raise workplace concerns is rampant across the meatpacking industry, *see U.S. Gov't Accountability Office*, GAO-18-12, Workplace Safety and Health: Better Outreach, Collaboration, and Information Needed to Help Protect Workers at Meat and Poultry Plants at 2 (2017) (concluding that widespread fear of retaliation in meatpacking plants impedes enforcement of workplace safety protections).

## FACTUAL BACKGROUND

Worker Plaintiffs are each current employees of Maid-Rite. Ex. A ¶ 2 (Declaration of Jane Doe I); Ex. B ¶ 1 (Declaration of Jane Doe II); Ex. C ¶ 2 (Declaration of Jane Doe III).

Jane Doe I contacted Friends of Farmworkers d/b/a Justice at Work ("Justice at Work") because of her concerns about how Maid-Rite was handling the COVID-19 crisis and asked the organization to file an OSHA complaint on her behalf. Ex. A ¶ 3. Jane Doe I informed her attorneys at Justice at Work that she could not be a part of any action if her name was shared. *Id.* at ¶ 4. She submitted an anonymous declaration to OSHA to help facilitate the investigation. *Id.* at ¶ 5. Despite her fears for her health, Jane Doe I is also very concerned about the consequences of Maid-Rite discovering her identity. Jane Doe I believes that if Maid-Rite discovers that she has made a complaint to OSHA and participated in this action, she will be fired. *Id.* at ¶¶ 6-7. Jane Doe I bases this belief on past experiences, where she has witnessed human resources employees harassing individuals who have made complaints. *Id.* at ¶ 8. In Jane Doe I's experience, any employee who does anything which Maid-Rite considers to be "out of line" will be fired. *Id.* at ¶ 9. A colleague at Maid-Rite has informed Jane Doe I that Maid-Rite management has been attempting to discover the identities of the workers who made the OSHA complaint. *Id.* at ¶ 11. She does not want anyone to know that she participated in the OSHA complaint or this action, and if she cannot maintain anonymity, she will not proceed as a Worker Plaintiff. *Id.* at ¶ 13.

Jane Doe II has worked at Maid-Rite for over 10 years. Ex. B at ¶ 1. Justice at Work represented her in filing an OSHA complaint against Maid-Rite. *Id.* at ¶ 2.

Jane Doe II has not revealed her name to OSHA, and she will not continue to pursue any legal action if she must reveal her identity. *Id.* at ¶ 3. She fears that Maid-Rite will retaliate against her if they learn she has participated in any complaint or action against the company. *Id.* at ¶ 4. Jane Doe II fears retaliation because she has witnessed retaliation against colleagues in the past when they made legal complaints. *Id.* at ¶ 5. Recently, Maid-Rite fired a colleague of Jane Doe II after this worker reported a workplace injury and sought redress with an attorney. *Id.* at ¶ 6. In Jane Doe II's experience, workers are often fired for taking legal action against Maid-Rite because of workplace injuries. *Id.* at ¶ 7. Maid-Rite also fabricates reasons for disciplining employees, which Jane Doe II herself has experienced. However, she is concerned with sharing the details of these incidents because Maid-Rite may be able to identify her. *Id.* at ¶ 8. Jane Doe II feels that she cannot risk this because Maid-Rite would fire her, and she would be without a job. Under the current circumstances, she would be unable to find a new position, which would leave Jane Doe II unable to support herself and her family. *Id.* at ¶ 9. Therefore, if Jane Doe II cannot retain her anonymity in this present action, she will be unable to proceed as a Worker Petitioner. *Id.* at ¶ 10.

  Jane Doe III contacted Justice at Work after she had contracted COVID-19 because she feared for her health and safety at Maid-Rite. Ex. C at ¶ 3. Jane Doe III joined the existing OSHA complaint filed by Jane Doe I and Jane Done II; Jane

Doe III joined the OSHA complaint without sharing her name. *Id.* at ¶ 4. To assist with the OSHA investigation, Jane Doe III wrote an anonymous declaration. *Id.* at ¶ 5. Jane Doe III will not reveal her identity at any point because she fears Maid-Rite will fire her if they discover that she has participated in a complaint and legal action against them. *Id.* at ¶ 6. In Jane Doe III's experience, Maid-Rite is very strict with its employees and disciplines them using a point system which ultimately leads to firing after points have been accumulated. *Id.* at ¶ 7. Maid-Rite gives employees points under this system even for absences due to illness or tardiness because of doctors' appointments. Jane Doe III believes that these policies remain in effect even during the current health crisis. *Id.* at ¶ 8. If Maid-Rite discovers her identity, they will fire Jane Doe III, leaving her unemployed and unable to support her family. *Id.* at ¶ 9. For this reason, Jane Doe III will not proceed as a Worker Plaintiff if she cannot proceed under pseudonym. *Id.* at ¶ 10.

## ARGUMENT

## WORKER PLAINTIFFS' MOTION SHOULD BE GRANTED

I. **Legal Standard**

District courts may allow a litigant to proceed under a pseudonym where he or she "sufficiently alleges that he or she has a reasonable fear of severe harm from litigating without a pseudonym." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir.

2011). The Third Circuit has adopted "a non-exhaustive list of factors to be weighed" when making this determination. *Id.* at 409. The factors that counsel in favor of anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* (quoting *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997)). The factors that counsel against anonymity include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* Because the factors set forth in this test are expressly non-exhaustive, courts also must "consider those [other] factors which the facts of the particular case implicate." *Id.* (quoting *Doe v. Provident Life*, 146 F.R.D. at 468).

**II.     Worker Plaintiffs Should be Permitted to Proceed under Pseudonym**

The factors, applied to the facts of this case, weigh heavily in favor of permitting Worker Plaintiffs to proceed under pseudonym. The workers have carefully guarded their identities thus far; their fear of the results of disclosure is based on objective past practices by Maid-Rite and across the meatpacking industry; their case serves a public interest as it seeks to keep workers, family members and communities safe from the spread of COVID-19; their allegations about the conditions at the Plant are generalized and thus could be refuted by information within the control of Maid-Rite if they were untrue, therefore there is no particular public interest served by revealing the Worker Plaintiffs' individualized identities; and they will not proceed if this motion is denied. Further, none of the factors counseling against pseudonymous proceedings is weighty here.

A. <u>Factors weighing in favor of proceeding under a pseudonym</u>

   1. ***The Worker Plaintiffs have kept their identities confidential***

Worker Plaintiffs have taken great care to protect their identities at every stage of the events leading up to this action. Their May 19, 2020 complaint to OSHA was filed by their representatives at Justice at Work to protect their anonymity.  Ex. 2 to Compl. ¶ 3 (Declaration of Alia Al-Khatib). Additionally, when OSHA demanded that Worker Plaintiffs provide their names and identifying information as a condition for interviewing them, Worker Plaintiffs declined. *Id*. at

¶ 20. Instead, they provided sworn statements to OSHA with their names redacted. *Id*. at ¶ 26. Worker Plaintiffs have not disclosed their involvement in this action to their colleagues. *See* Ex. A ¶ 12.

Courts applying the *Megless* balancing test have found similar efforts to prevent disclosure of the identity of plaintiffs to the public weigh in favor of permitting anonymity. *See L.A. v. Hoffman,* No. 14-6895, 2015 WL 4461852, at *2 (D.N.J. July 21, 2015) (finding that plaintiffs "promptly sought to maintain their anonymity by filing the present request on the same day their Complaint was filed" and "diligently attempted to prevent disclosing their involvement in this case to the public"); *Doe v. Univ. of Scranton*, No. 3:19-CV-1486, 2020 U.S. Dist. LEXIS 44812, at *5 (M.D. Pa. Mar. 16, 2020) (finding the plaintiff had not waived his claim to anonymity where his name had not been disclosed since initiating his lawsuit and only a small group of people knew his sexual orientation). Here too, the Worker Plaintiffs have diligently protected their identities for the reasons described below. This factor therefore weighs in favor of anonymity.

### 2. *The Worker Plaintiffs fear disclosure based on an objectively reasonable expectation of reprisal*

Worker Plaintiffs have substantiated significant reasons to fear destructive retaliation. Each believes their job would be in jeopardy if Maid-Rite became aware of their communication with OSHA, counsel, and this Court. Ex. A ¶¶ 6-7; Ex. B ¶¶ 6-8; Ex. C ¶ 9. Worker Plaintiffs fear reprisal based on Maid-Rite's past

acts of retaliation, including harassment and even discharge of workers who made legal complaints. Ex. A ¶ 8; Ex. B ¶¶ 6-7. At Maid-Rite, even stepping "slightly out of line" can lead to termination. Ex. A ¶ 9, *see also* Ex. C ¶ 8 (stating that Maid-Rite punishes workers for calling in sick or arriving late to attend doctors' appointments). Further, Worker Plaintiffs are aware of Maid-Rite already attempting to ascertain their identities. Ex. A ¶¶ 12-13. In an atmosphere where even small complaints can lead to discipline or termination, the Worker Plaintiffs reasonably believe filing a complaint with a federal agency and this Court would result in retaliation by their employer. Indeed, Worker Plaintiffs have observed retaliation first-hand: Maid-Rite has fired employees for taking legal action because of workplace injuries. Ex. B ¶¶ 5-7. Worker Plaintiffs cannot risk being fired. Given the current economic climate, losing their job at Maid-Rite would likely mean devastating consequences for Worker Plaintiffs and their families. Ex. B ¶ 9; Ex. C ¶ 9.

    Worker Plaintiffs are not alone in their fear that reporting safety and health concerns in the meat processing industry will lead to dismissal or punishment. After conducting extensive interviews with workers, the U.S. Government Accountability Office ("GAO") found that meat processing workers are reluctant to contact OSHA with safety concerns for fear of employer retaliation. *U.S. Gov't Accountability Office*, GAO-18-12 at 2. Given this pervasive fear among workers

like Worker Petitioners, the GAO recommended that OSHA take additional steps to obtain information anonymously. *Id.* at 24-25, 50.

### 3. *The public interest is served by maintaining the confidentiality of the Worker Plaintiffs' identities*

To determine the "magnitude of the public interest in maintaining the confidentiality of the litigant's identity," *Megless* instructs that courts should ask whether "similarly situated litigants would be deterred from litigating claims that the public would like to have litigated" and harm alleged in the complaint is "widespread[.]" 654 F.3d. at 409-10; *see also Doe v. Univ. of Scranton*, No. 3:19-CV-1486, 2020 U.S. Dist. LEXIS 44812, at *7 (M.D. Pa. Mar. 16, 2020) ("Without the protection of anonymity, future such plaintiffs would likely decline to participate in the lawsuit, and the public's interest in ensuring that those responsible for sexual orientation discrimination are held responsible could remain suppressed.").

Here, the public interest is served when safety complaints like the one at issue here are litigated—especially safety complaints that are generalized to an entire workplace or industry. If workers abstain from complaining for fear of losing their jobs, whole communities may be harmed. In plants such as Maid-Rite, low wage breadwinners must weigh the risk of immediate and acute harm if their employers uncover their identities. Indeed, the Occupational Safety and Health Act ("OSH Act") itself recognizes that workers who raise health and safety concerns

often have legitimate fears about their identities being revealed to their employers, and consequently includes provisions to protect that information from disclosure to employers to facilitate health and safety complaints. *See* 29 U.S.C. § 657(f)(1) ("Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that, upon the request of the person giving such notice, *his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section*.") (emphasis added). The OSHA Field Operations Manual also lays out several options for workers to file complaints anonymously. An imminent danger complaint will normally commence the OSHA inspection procedure, even if it is submitted without the signature of a worker or a worker representative. Dep't of Labor, *Safety and Health Complaints and Referrals*, OSHA Field Op. Man., Sec I(C)(3), Ch. 9 (Apr. 14, 2020). Employees can also submit complaints without identifying information to report non-urgent health and

safety violations, although these will be treated as inquiries, which require less action than inspections.  *Id*. at Sec I(A)(3), Ch. 9 (Apr. 14, 2020).

To require workers proceeding under 29 U.S.C. § 662(d) to employ their legal names when they proceeded anonymously before the agency would be inconsistent with Congress' intent and the agency's own policies. The entire function of § 662(d) is to allow workers who have attempted to use OSHA procedures to force the agency to act when it is too recalcitrant. If courts required those workers to reveal their identities they would effectively undercut this congressionally enacted remedy. As OSHA recognizes, workers may be rightfully fearful of their employers and thus will only file a complaint if they can proceed anonymously. They should not have to reveal their identity to fulfill the purpose of that anonymous administrative complaint.

Similarly, the harm alleged in the Complaint is "widespread[,]" which also militates in Worker Plaintiffs' favor. *Megless,* 654 F.3d. at 410 (noting that the harm alleged in that case—false suspicious person alerts—were not a "widespread problem" and therefore did not warrant leave to proceed under pseudonym).  Here, the Commonwealth of Pennsylvania and the United States as a whole have faced a series of devastating COVID-19 outbreaks in meat processing facilities. *See* Jessica Calefati & Bob Fernandez, *Pa. has more coronavirus cases among meat plant*

*workers than any other state, CDC says*, Phila. Inquirer, (May 1, 2020),[1]; Jazmine Hughes, *As Meatpacking Plants Look to Reopen, Some Families are Wary*, N.Y. Times, (May 27, 2020),[2] (noting that meatpacking plants have been "hotbeds" of COVID-19 spread).. Those outbreaks reached the Maid-Rite plant at issue in this case. OSHA's failure to appropriately evaluate and address worksite safety and worksite compliance with CDC guidance during the pandemic has been widely noted. Were Worker Plaintiffs not to pursue this action because their request to proceed under pseudonym was denied, they and other workers would continue to labor in dangerous conditions without oversight or protection, which in turn would place the broader public at risk as well.

### 4. There is an atypically weak public interest in knowing the Worker Plaintiffs' identities

The public does not need to know the identities of the Worker Plaintiffs to understand the issues in this case. Worker Plaintiffs raise issues common to all the workers at the Maid-Rite plant; there is no focus on their individualized experiences. Rather, the Complaint pertains to the collective imminent danger all

---

[1] Jessica Calefati & Bob Fernandez, *Pa. has more coronavirus cases among meat plant workers than any other state, CDC says*, Phila. Inquirer, (May 1, 2020), available at https://www.inquirer.com/business/retail/cdc-20200501.html.

[2] Jazmine Hughes, *As Meatpacking Plants Look to Reopen, Some Families are Wary*, N.Y. Times, (May 27, 2020), available at https://www.nytimes.com/interactive/2020/05/27/magazine/coronavirus-nebraska-unemployment-jobs.html.

workers at Maid-Rite face, and the effect on all workers of OSHA's failure to appropriately respond to those imminent dangers. As the public will maintain access to the docket and filings, interested observers can follow the proceedings without knowledge of Worker Plaintiffs' identities. *See, e.g.*, *Lozano v. City of Hazleton,* 496 F. Supp. 2d 477, 513 (M.D. Pa. 2007) ("There is widespread public interest in this case, but that interest is focused not on the identities of the plaintiffs, but on the legal issues at the heart of the case."); *Hoffman,* 2015 WL 4461852, at *2 (finding "the circumstances surrounding each Plaintiff are not of central importance to Plaintiffs claims" when granting leave to proceed anonymously).

### 5. *The public interest would be harmed if the Worker Plaintiffs refuse to pursue this case because they cannot proceed anonymously*

Worker Plaintiffs will be completely deterred from proceeding as parties in this action should this motion be denied. In fact, each has repeatedly stated that they will withdraw as plaintiffs if they cannot remain anonymous. *See* Ex. A ¶ 13; Ex. B ¶ 10; Ex. C ¶ 10.

### 6. *The Worker Plaintiffs do not have illegitimate ulterior motives*

The only bases upon which Worker Plaintiffs seek to proceed pseudonymously are those identified above, namely that they reasonably fear retaliation by their employer, Maid-Rite, if they are identified as the complainants who initiated the OSHA complaint process.

B. <u>Factors opposed</u>

*Megless* also requires the Court to weigh three factors "opposing" anonymity: the universal public interest in knowing litigants' identities, whether there is a particularly strong public interest in knowing *these* litigants' identities, and whether opposition to proceeding pseudonymously is illegitimately motivated. *Megless*, 654 F.3d at 409. Here, there is no strong public interest in requiring Worker Plaintiffs to use their real names. The conditions they allege at their workplace and their allegations regarding OSHA's response are not individualized; they affect all the workers at Maid-Rite. There is a public interest in remedying imminent dangers to workers and demanding legally appropriate action by the agency tasked with protecting those workers. Moreover, the status of Worker Plaintiffs does not create a particularly strong interest in knowing their identity, given the fact that they are not public figures or otherwise of particular interest to the public.

In sum, the factors opposed to allowing Worker Plaintiffs to proceed using a pseudonym are far outweighed by the factors in favor of anonymity.

### III.   Conclusion

The Worker Plaintiffs respectfully request that the Court grant the urgent relief requested and permit them to file a complaint using a pseudonym and thereby toll the statute of limitations with such a pseudonymous filing.

Respectfully submitted this 22st day of July 2020.

s/Lerae Kroon, PA Bar No. 325464
Nina Menniti, PA Bar No. 326828
Samuel Datlof, PA Bar No. 324716
**FRIENDS OF FARMWORKERS, INC.,
D/B/A JUSTICE AT WORK**
990 Spring Garden St, Suite 300
Philadelphia, PA 19123
Telephone: (215) 733-0878
Fax: (215) 733-0878
lkroon@justiceatworklegalaid.org
nmenniti@justiceatworklegalaid.org
sdatlof@justiceatworklegalaid.org
*Attorneys for Jane Does I, II, and III*