# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| JANE DOES I, II, III, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:20-1260 |
| | ) | |
| EUGENE SCALIA, United States | ) | (JUDGE MANNION) |
| Secretary of Labor, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

DAVID J. FREED
UNITED STATES ATTORNEY

G. MICHAEL THIEL
Assistant U.S. Attorney
Atty. I.D. #PA 72926
235 N. Washington Ave., Ste. 311
Scranton, PA 18503
Phone: (570) 348-2800
mike.thiel@usdoj.gov

KATE S. O'SCANNLAIN
SOLICITOR OF LABOR
U.S. DEPARTMENT OF LABOR

EDMUND C. BAIRD
Associate Solicitor for
 Occupational Safety and Health

OSCAR L. HAMPTON III
Regional Solicitor
Atty. I.D. #MO 36778
170 S. Independence Mall West
Suite 630 East
Philadelphia, PA 19106
(215) 861-5120
hampton.oscar@dol.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................iii

Introduction........................................................................................1

I.    Background

   A.    Statutory and Regulatory
         Background ...........................................................................7

   B.    Factual Background ...........................................................11

II.    Legal standards...............................................................................16

III.   Argument

   A.    The Court Lacks Subject-Matter Jurisdiction
         to Determine Whether an Imminent Danger
         Exists at the Plant.................................................................19

   B.    Because Plaintiffs Do Not Allege the Requisite
         CSHO Recommendation, They Fail to State a
         Subsection 13(d) Claim. .......................................................23

   C.    In the Alternative, The Complaint Does
         Not Plausibly Allege an Imminent Danger ......................28

IV.   Conclusion.......................................................................................31

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                      <u>Page(s)</u>

*In re AFL-CIO,*

    No. 20-1158, 2020 WL 3125324 (D.C. Cir. June 11, 2020) .................. 1

*Ahmed v. Department of Homeland Security,*

    323 F.3d 383 (7th Cir. 2003) ................................................................ 18

*American Hosp. Ass'n v. Burwell,*

    812 F.3d 183 (D.C. Cir. 2016) ............................................................. 18

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009) .............................................................................. 17

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544 (2007) ......................................................................... 17, 18

*Calle-Vujiles v. Ashcroft,*

    320 F.3d 472 (3d Cir. 2003) ................................................................ 20

*Cuyahoga Valley Ry. Co. v. United Transp. Union,*

    474 U.S. 3 (1985) ................................................................... 7, 8, 11, 12

*Envtl. Def. Ctr., Inc. v. EPA,*

    344 F.3d 832 (9th Cir. 2003) .......................................................... 19, 29

*Gould Elec., Inc. v. United States,*

220 F.3d 169 (3d Cir. 2000) .................................................. 13, 16, 17

*Hahnemann Univ. Hosp. v. Edgar,*

74 F.3d 456 (3d Cir. 1996) ................................................. 18

*Heckler v. Chaney,*

470 U.S. 821 (1985) ........................................................ 2, 20

*In re Patenaude,*

210 F.3d 135 ................................................................ 18

*Int'l Union v. Chao,*

361 F.3d 249 (3d Cir. 2004) ............................................. 18, 19

*Kehr Packages v. Fidelcor, Inc.,*

926 F.2d 1406 (3d Cir. 1991) ............................................ 17

*Lujan v. Defs. of Wildlife,*

504 U.S. 555 (1992) ........................................................ 30

*Makarova v. United States,*

201 F.3d 110 (2d Cir. 2000) ............................................. 16

*Marshall v. Daniel Constr. Co.,*

563 F.2d 707 (5th Cir. 1977) ....................................... 3, 24, 27

*Marshall v. Whirlpool Corp.,*

593 F.2d 715 (6th Cir. 1979) ............................................ 25

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*

463 U.S. 29 (1983) ............................................................................. 19

*Nat'l Roofing Contractors Ass'n v. U.S. Dept. of Labor*,

639 F.3d 339 (7th Cir. 2011) ........................................................ 7, 22

*Phillips v. Cty. of Allegheny*,

515 F.3d 224 (3d Cir. 2008) ........................................................ 17, 18

*United States v. Atl. Research Corp.*,

551 U.S. 128 (2007) ................................................................... 25, 26

Statutes

Administrative Procedures Act

5 U.S.C. § 706(2)(A) ................................................................. 18, 19

Occupational Safety and Health Act of 1970

29 U.S.C. § 657(f)(1) ...................................................................... 8

29 U.S.C. § 658(a) .......................................................................... 7

29 U.S.C. § 658(b), (c) .................................................................... 7

29 U.S.C. § 661 ............................................................................... 8

29 U.S.C. § 659 ........................................................................... 7, 8

29 U.S.C. § 662 ..................................................................... 2, 8, 23

29 U.S.C. § 662(a) ............................................................... passim

29 U.S.C. § 662(c) .................................................................. 4, 9, 24

29 U.S.C. § 662(c)-(d) ........................................................ 3, 6, 24

29 U.S.C. § 662(d) ............................................................. 18, 21

29 U.S.C. §§ 659(b), 659(c), 661 ..................................................8

29 U.S.C. §§ 662(a)-(b) ............................................................20

## Regulations

29 C.F.R. § 1903.13 .............................................................24

29 C.F.R. §§ 1903.11-.13...........................................................9

## Rules

Fed. R. Civ. P. 12(b)(1) .................................................. 13, 16, 19

Fed. R. Civ. P. 12(b)(6) .................................................... 17, 31

# Introduction

Since the inception of the COVID-19 pandemic, the Occupational Safety and Health Administration (OSHA) has been singularly focused on how to best further its mission to protect the health and safety of America's workers amidst this crisis.[1]  More specifically, with respect to America's meat processing facilities, OSHA has been charged with protecting employees of meat processing facilities from the spread of COVID-19, while at the same time ensuring the continued production of meat products for the benefit of the American people.

To that end, at Maid-Rite's Dunmore, PA meat processing facility (the Plant), OSHA conducted multiple investigations including a site inspection after receiving complaints about the Plant's response to COVID-19.  Indeed, OSHA's work there continues as its Plant inspection and investigation remains ongoing.  Despite that, Plaintiffs filed this unprecedented, anonymous lawsuit under section 13 of the

---

[1] *See In re AFL-CIO*, No. 20-1158, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020) (per curiam) (unpublished) (acknowledging the "unprecedented nature of the COVID-19 pandemic, as well as the regulatory tools that the OSHA has at its disposal to ensure that employers are maintaining hazard-free work environments.")

Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 662.  But as explained below, Plaintiffs' novel Complaint must be dismissed because Plaintiffs have not alleged the facts necessary to invoke this Court's jurisdiction or to entitle them to the extraordinary relief of a writ of mandamus.

The Secretary of Labor (Secretary)[2] has broad prosecutorial discretion to enforce the OSH Act.  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").  With limited exceptions, nearly all OSH Act enforcement actions are heard by Occupational Safety and Health Review Commission (OSHRC).  First the case is heard by OSHRC ALJ, and the ALJ's decision may be reviewed by the full OSHRC.  Only after exhausting these tribunals may a court of appeals be petitioned.

Against this backdrop, Section 13 of the OSH Act provides a limited vehicle—reserved for rare circumstances— to seek mandamus

---

[2] The Secretary has delegated most of his responsibilities under the OSH Act to the Assistant Secretary for Occupational Safety and Health, who heads OSHA. See 77 Fed. Reg. 3912 (Jan. 25, 2012).

in federal district court "to restrain any conditions or practices… that a danger exists which could reasonably be expected to cause death or serious physical harm immediately" pending the outcome of a potential enforcement proceeding.  29 U.S.C. § 662(a).

Even more rare, within Section 13, subsection 13(d) provides an employee with a private right of action if two distinct elements are present: (i) an inspector has made a "[r]ecommendation" to the Secretary under Section 13(c) to institute imminent danger proceedings that is (ii) "arbitrarily or capriciously" rejected by the Secretary.  29 U.S.C. § 662(c)-(d).  *See, e.g.*, *Marshall v. Daniel Constr. Co.*, 563 F.2d 707, 711 (5th Cir. 1977) ("Employees are entitled to petition the federal district court for a writ of mandamus against the Secretary if he arbitrarily or capriciously fails to seek the injunctive relief *requested by the OSHA inspector*.") (emphasis added).

But no such "[r]ecommendation" has been made in this case.  29 U.S.C. § 662(c)-(d).  Thus far, after multiple investigations and ongoing inspections, OSHA has determined that no imminent danger exists at the Plant.  And because OSHA has concluded that there is no imminent danger—and thus has made no "[r]ecommendation" that the Secretary

correct such a danger—there is no Secretarial rejection of a "[r]eccomendation" for this court to subject to arbitrary and capricious review."  29 U.S.C. § 662(c).

Even if there were a Secretarial rejection for this court to review (there is not), this court should decline Plaintiffs' extraordinary invitation to use judicial intervention to highjack the Secretary's enforcement discretion and priorities and second-guess OSHA's judgment as it relates to occupational health and safety conditions at the Plant.  Indeed, Plaintiffs seek an Order compelling the Secretary to seek an injunction or Temporary Restraining Order in federal court. But Plaintiffs do not begin establish, let alone allege, how the Secretary could satisfy the stringent requirements for obtaining such relief.

Just how extraordinary is Plaintiffs' request?  In the OSH Act's fifty-year history, the Secretary is aware of only three times he has petitioned for an injunction under Section 13(a).  Even more extraordinary, no Court has *ever* granted mandamus relief to an employee under section 13(d).

Congress fashioned section 13(d) that way for good reason:  By first requiring a recommendation from a trained OSHA inspector (also

called a Compliance Safety and Health Officer, or CSHO) that must be arbitrarily or capriciously rejected by the Secretary—Congress set an intentionally high bar to limit this private right to only the cases that are most likely to be meritorious, while avoiding the avalanche of cases that a broader right would inevitably bring.  If anonymous litigants could drag OSHA into court every time they disagreed with the agency's investigatory conclusions, the agency would be severely limited in its ability to carry out its mission.  Congress thus struck a balance in section 13—ensuring employees who are exposed to imminent dangers are not prevented by the usual rules of prosecutorial discretion from obtaining an injunction, but limiting that exception to those instances in which an CSHO's recommendation to abate an imminent danger has gone unheeded.

Thus, this case should be dismissed for several reasons.  First, because this case does not fall within subsection 13(d)'s cause of action, this Court has no jurisdiction to review the Secretary's prosecutorial decisions in this matter.  Here, after a several months' long investigation, a CSHO visited the Plant on July 9, 2020 and did not find an imminent danger present.  As a result, the Secretary did not receive

a recommendation that an imminent danger proceeding be commenced to protect workers at the facility.  Again, the court only has jurisdiction to review whether the Secretary "arbitrarily or capriciously fail[ed] to seek relief" after receiving a recommendation from the CSHO.  29 U.S.C. § 662(c)-(d).

Second and similarly, the complaint fails to state a claim upon which relief may be granted, because it does not allege that a CSHO has found an imminent danger and recommended that the Secretary seek injunctive relief.

Finally, even if subsection 13(d) allowed an action without an imminent danger finding by the CSHO, Plaintiffs fail to state a plausible claim.  On its face, the Complaint states only a possibility that COVID-19 could spread in the Plant at some unknown time in the future, which falls far short of alleging an "imminent danger." Plaintiffs likewise fail to allege that any of the conditions of which they complain—assuming such conditions are actionable under the OSH Act or relevant OSHA standards—could not be eliminated through normal enforcement channels, as opposed to the unprecedented measure of Section 13 injunctive relief.

## I. Background

### A. Statutory and Regulatory Background

OSHA has broad prosecutorial discretion when carrying out its enforcement responsibilities under the OSH Act. *See Nat'l Roofing Contractors Ass'n v. U.S. Dept. of Labor*, 639 F.3d 339, 343 (7th Cir. 2011); *Cuyahoga Valley Ry. Co. v. United Transp. Union*, 474 U.S. 3, 6 (1985) ("It is also clear that enforcement of the Act is the sole responsibility of the Secretary"). If the Secretary believes, as a result of an investigation, that the employer has violated the OSHA requirements, he will issue a citation to the employer. 29 U.S.C. § 658(a). The citation must be posted at the workplace and issued within six months of the violation. 29 U.S.C. § 658(b), (c). The employer has fifteen business days to contest the citation. Contested citations are heard by the OSHRC, an independent agency that is not a part of the Department of Labor. 29 U.S.C. § 659. Where the employer contests the citation, it is not obligated to take steps to abate the hazards alleged in the citation until a final order of the Commission. *See id.* Only after the Commission issues its final order may a party

petition a federal courts of appeal for review.  *See* 29 U.S.C. §§ 659(b), 659(c), 661.

The OSH Act permits employees who believe that a violation of a safety or health standard—or an imminent danger—exists at their workplace to request an inspection by filing a complaint with the Secretary.  29 U.S.C. § 657(f)(1).  If the Secretary determines that there are reasonable grounds to believe that such a violation or danger exists, the Secretary must initiate an inspection "as soon as practicable, to determine if such violation or danger exists."  *Id.*

Section 13 of the OSH Act details specific "Procedures to Counteract Imminent Dangers" if such dangers are found during the course of an inspection.  Pub. L. No. 91-596, § 13 (title), 84 Stat. 1590, 1605 (codified at 29 U.S.C. § 662).  "Imminent dangers" are "any conditions or practices in any place of employment which are such that a danger exists which could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this Act."  29 U.S.C. § 662(a).  If a CSHO finds that a condition or practice poses an imminent danger, the CSHO "shall

inform the affected employees and employers of the danger and that he is recommending to the Secretary that relief be sought" under subsection 13(a) of the OSH Act.  *Id.* § 662(c).  The Secretary, in turn, may file a petition in a U.S. district court to restrain conditions and practices that create the imminent danger.  *Id.* § 662(a).  In such actions, the district court has authority to grant injunctive relief or a temporary restraining order to eliminate the hazard pending the outcome of an OSHA enforcement proceeding.  *Id.* § 662(b).  The final provision in this section provides a narrow private right of action where employees may obtain judicial review *if and when* the Secretary arbitrarily or capriciously decides *not* to pursue a § 13(a) action despite a CSHO's recommendation to do so.  Subsection 13(d) states, in relevant part:

> If the Secretary arbitrarily or capriciously fails to seek relief under this section, any employee who may be injured by reason of such failure … might bring an action against the Secretary in the United States district court … for a writ of mandamus to compel the Secretary to seek such an order….

*Id.* § 662(d).

The Secretary's regulations clarify OSHA's handling of employee complaints about believed imminent dangers.  *See* 29 C.F.R. §§ 1903.11-

.13.  An employee may file such a complaint with the Area Director or a

CSHO.  *Id.* § 1903.11(a).  The Area Director shall make the

determination of whether complaints provide reasonable grounds to

believe that the alleged violation exists.  *Id.* § 1903.11(b).  If the Area

Director finds such grounds, the Area Director will "cause an inspection

to be made as soon as practicable."  *Id.* § 1903.12(a).  If the Area

Director does not find such grounds, she must "notify the complaining

party in writing of such determination."  *Id.* § 1903.12(a).  If a CSHO

"concludes on the basis of an inspection that conditions or practices

exist" that constitute an imminent danger, the CSHO will "inform the

affected employees and employers of the danger and that he is

recommending a civil action to restrain such conditions or practices and

for other appropriate relief in accordance with the provisions of section

13(a) of the Act."  *Id.* § 1903.13.[3]

---

[3] OSHA's Field Operations Manual (FOM) articulates a similar process for handling reports of imminent dangers.  *See* FOM, CPL 02-00-164, Ch. 11 (Apr. 14, 2020), https://tinyurl.com/yxudewe9.  Notably, the FOM explains that, if a CSHO identifies an imminent danger, and the employer either cannot or will not voluntarily eliminate the hazard or remove affected employees from exposure to the hazard, the CSHO will confer with the Area Director and obtain permission to post a Notice of an Alleged Imminent Danger.  Ultimately, the Area Director and

## B.  Factual Background

Throughout the pandemic, OSHA has employed a two-pronged strategy for combatting the danger of COVID-19 in the workplace.[4]  The first prong is diligent enforcement of its existing rules and statutory requirements that pertain to infectious-disease exposure.  Over the past few months, OSHA has conducted thousands of COVID-19-related investigations.  Sweatt Dec. ¶ 13.  The second prong is the issuance of detailed guidance, often developed and issued in coordination with the CDC, to inform employers of the best methods for protecting their employees from exposure to the SARS-CoV-2 virus at the workplace.  Sweatt Dec. ¶¶ 4-9.   OSHA has provided the public with a broad collection of guidance materials—including detailed elaborations of recommended mitigation measures, shorter alerts, news releases, posters, and videos addressing COVID-19-related health and safety issues—to ensure that employees and workers are armed with the best available information.  *Id*.

---

Regional Administrator, in consultation with the Regional Solicitor, make the determination whether to initiate a court action.  *Id*.

[4] The information provided in this section regarding OSHA's activities during the pandemic are provided solely for background.

The meat and poultry processing industry has been a specific focus of the federal government's efforts to protect workers during this public-health crisis.  On April 26, 2020, OSHA collaborated with the CDC to issue guidance to meat-processing facilities regarding safety measures that may be taken to reduce the spread of the virus that causes COVID-19.  *See* https://tinyurl.com/ydy2vl4l.  Among other things, the guidance calls upon employers to implement feasible engineering and administrative controls to improve social distancing, to ensure access to handwashing facilities, and to create an assessment and control plan.  *See id.*

Then, on April 28, 2020, the President issued an Executive Order under the Defense Production Act of 1950 (DPA), directing the Secretary of Agriculture to "determine the proper nationwide priorities and allocation of all the materials, services, and facilities necessary to ensure the continued supply of meat and poultry, consistent with the guidance for the operations of meat and poultry processing facilities jointly issued by the CDC [Centers for Disease Control and Prevention] and OSHA."  *See* https://tinyurl.com/y29seac5.  The Department of Agriculture (USDA) thus pledged that it would "work with meat

12

processing [facilities] to affirm they will operate in accordance with the CDC and OSHA guidance, and then work with state and local officials to ensure that these plants are allowed to operate to produce the meat protein that Americans need." *See* https://tinyurl.com/y3y5ebom.  A memorandum of understanding followed in May that established a process in which the FDA and USDA agreed to communicate and make determinations about circumstances in which USDA could exercise its authority under the DPA with regard to certain domestic food resource facilities that manufacture, process, pack, or hold foods, as well as to those that grow or harvest food.

Against this backdrop, in April and May 2020, employees of Maid-Rite, including the Plaintiffs here, lodged complaints with OSHA's Wilkes-Barre Area Office about the potential spread of COVID-19 within a processing plant in Dunmore, Pennsylvania.[5]

---

[5] The information provided in this section regarding OSHA's ongoing investigation of the Plant may be used in support of OSHA's factual argument that the Court lacks subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *Gould Elec., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (a court reviewing a factual jurisdictional challenge in a motion to dismiss may consider evidence outside the pleadings).

The Area Office treated the initial two complaints together as one, non-formal complaint,[6] consistent with then-applicable national enforcement guidance.  Stelmack Dec. ¶ 3; *see* https://tinyurl.com /y3kk4dmu.  According to the procedures for non-formal complaints, the Area Office informed Maid-Rite of the employee-based complaint and asked for the employer's  response.  Stelmack Dec. ¶ 3; Complaint Ex. 1 at 30.

Maid-Rite responded on April 15, 2020, by detailing particular measures it was taking that were consistent with the forthcoming OSHA/CDC guidelines: the company reported that it engaged a third-party consultant to prepare a COVID-19 assessment checklist; hired an industrial cleaning firm to clean and sanitize the Plant with a disinfectant; instituted a staggered schedule for lunch and breaks; procured and issued masks to all of its employees; ordered clear plastic face shields for all of its employees; and began taking the temperatures

---

[6] Typically, non-formal complaints are initially handled through an "inquiry," under which OSHA notifies the employer of the complaint and asks for a response.  FOM at 9-1.  A formal inspection may follow, depending on the employer's response and any other information that OSHA acquires.  *See* FOM at 9-3.

of all employees before they entered the Plant.  Stelmack Dec. ¶5;

Complaint Ex. 1 at 2-5.

On June 2, 2020, because it received additional complaints about

the Plant, OSHA's Area Office opened an inspection to determine

whether the company was taking all feasible measures to allow

employees to socially distance.  Stelmack Dec. ¶¶ 6-8.  As part of

OSHA's inspection, which remains ongoing to date, the designated

CSHO requested relevant documents from Maid-Rite and sought

employee interviews.  Stelmack Dec. ¶¶ 8-9; Warner Dec. ¶¶ 5-6.

OSHA has interviewed at least fifteen Maid-Rite employees thus far.

Warner Dec. ¶ 6.

The CSHO conducted an on-site inspection of the Plant on July 9,

2020 to personally observe the conditions at the worksite.  Warner Dec.

¶¶ 9-10.  Based on what she observed, the CSHO did not believe that an

imminent danger existed at the Plant.  As a result, she did not

recommend to her supervisors than an imminent danger action should

be brought under section 13 of the OSH Act.  *Id*. ¶ 11.

In the course of the ongoing inspection, Maid-Rite has informed

the CSHO that it has not experienced a COVID-19 case among its

employees since May 14, 2020.  *Id.* ¶ 12.  Nor has the company reported any workplace-related hospitalizations or fatalities to OSHA.  *Id.*

Based upon the evidence compiled thus far, the CSHO in consultation with the Area Director has determined that imminent danger conditions warranting injunctive relief under section 13 of the OSH Act are not present at the Plant.  Stelmack Dec. ¶ 10; Warner Dec. ¶ 11.

OSHA has not yet concluded its complete investigation, and has yet to determine whether Maid-Rite has violated any of the OSH Act's requirements or any OSHA standards or whether any citations should issue.  *Id.* ¶ 13.

## II.  Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires dismissal of a case for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A motion under Rule 12(b)(1) may be treated as either a facial attack on the complaint or a factual challenge to the court's subject matter jurisdiction. *Gould Elec.*, 220 F.3d at 176.  A court reviewing a facial

16

attack may consider only the allegations of the complaint and any documents referenced therein or attached thereto in the light most favorable to the plaintiff, while a court reviewing a factual attack may consider evidence outside the pleadings.  *Id.*  When the court's subject matter jurisdiction is challenged, the plaintiff bears the burden of persuasion.  *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

Additionally, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires complaints to contain "enough factual matter (taken as true) … to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the claim.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  When evaluating whether a complaint has stated a claim upon which relief can be granted, a court must accept factual allegations as true, but a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or asserts simply

"an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  Additionally, a court may disregard a complaint's legal assertions—"[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

A writ of mandamus is a "drastic remedy that 'is seldom issued and its use is discouraged.'" *In re Patenaude*, 210 F.3d 135, 140 (3d Cir. 2000.  Two requirements that a plaintiff must demonstrate for mandamus, which are jurisdictional, are "a clear and indisputable right to relief," and "no adequate alternative remedy." *American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); s*ee also Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996).[7]

The reference to "arbitrary" or "capricious" decisions in 29 U.S.C. § 662(d) has a familiar meaning, as the Administrative Procedure Act's (APA) "arbitrary and capricious" standard is applicable to most agency decisions.  *See* 5 U.S.C. § 706(2)(A); *Int'l Union v. Chao*, 361 F.3d 249,

---

[7] Even if courts do not consider these requirements jurisdictional, they still deny mandamus when the requirements are not met. See, e.g., Ahmed v. Department of Homeland Security, 323 F.3d 383, 385-87 (7th Cir. 2003).

254 (3d Cir. 2004).  Under that standard, "[t]he scope of review … is

narrow and a court is not to substitute its judgment for that of the

agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983); *see* 5 U.S.C. 706(2)(A).  OSHA has not yet

concluded its investigation, and has not yet determined whether a

citation will issue to Maid-Rite for violations of the OSH Act's general

duty clause or any OSHA standards.  *See Envtl. Def. Ctr., Inc. v. EPA*,

344 F.3d 832, 858 n.36 (9th Cir. 2003).  "[A]gencies are scrutinized at

the most deferential end of the arbitrary and capricious spectrum"

where the allegation is that an agency unlawfully failed to act.  *Int'l

Union*, 361 F.3d at 254-55.

## III.  Argument

### A.   The Court Lacks Subject-Matter Jurisdiction to Determine Whether an Imminent Danger Exists at the Plant.

The Complaint should be dismissed under Rule 12(b)(1) for lack of

jurisdiction.  At bottom, Plaintiffs ask the Court to determine that an

imminent danger exists at the Plant.  Plaintiffs also want the Court to

decide what to do about the alleged imminent danger.  They request

that the Court mandate that the Secretary seek a court order under

Section 13, *i.e.*, an order for injunctive relief or a temporary restraining order requiring Maid-Rite to "abate" the threat of COVID-19 to the Plant, Compl. ¶ 153, during the pendency of an OSHA enforcement action against Maid-Rite adjudicated before OSHRC, 29 U.S.C. §§ 662(a)-(b).  To issue such a mandate, the Court would need to determine both that OSHA should bring an enforcement action against Maid-Rite and that the extraordinary step of enjoining Maid-Rite during the pendency of that action is warranted, which encompasses consideration of whether normal enforcement channels are sufficient.

Each of these determinations is laden with the Department of Labor's subject-matter expertise and its prosecutorial discretion.  In general, this Court has no jurisdiction to review such determinations, much less, as the Complaint demands, to make them in the first instance.  *See, e.g.*, *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 474 (3d Cir. 2003) ("[C]ourts have no jurisdiction to review matters 'committed' to the agency's discretion."); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

To be sure, Congress has provided one limited exception—the private right of action under subsection 13(d) of the OSH Act, 29. U.S.C. § 662(d).  But that provision does not allow a court to, at any stage of the process, take jurisdiction over a complaint to OSHA of an imminent danger.  Nor does it allow a court to reach conclusions about the allegations of imminent danger for itself without regard to if and what OSHA, in its subject-matter expertise and through its delegated authority from Congress, have decided.  To the contrary, and as explained more fully below, judicial review under subsection 13(d) is only available if a CHSO determines an imminent danger exists, recommends injunctive relief and communicates that recommendation to the affected employer and employees, yet the Secretary rejects that recommendation.  Subsection 13(d) by its plain terms does not permit an employee to seek judicial review of OSHA's determination that an imminent danger does *not* exist at their workplace.

This is for good reason.  OSHA is best suited to make the determination whether an imminent danger exists.  That determination involves evaluating the specific conditions of the workplace under the judgment of the agency's CSHOs, who are specifically trained in

workplace safety.  Sweatt Dec. ¶¶ 14-15.  They, along with their supervisors and colleagues, have a breadth of experience developed over hundreds of workplace inspections that provides an indispensable perspective from which to form judgments about the existence of imminent dangers.  Sweatt Dec. ¶ 15.  And OSHA keeps them abreast of the new and constantly evolving information regarding the virus and recommended precautions.  Sweatt Dec. ¶ 14.  *See, e.g., Nat'l Roofing*, 639 F.3d at 343 (OSHA's prosecutorial decisions "belong[] to the Secretary, not to the court").

The facts of this case show the Court's lack of subject-matter jurisdiction.  OSHA has inspected the working conditions at the Plant and, in its judgment, concluded that no imminent danger exists.  Warner Dec. ¶ 11; Stelmack Dec. ¶ 10.  As a result, OSHA has not issued a recommendation under subsection 13(c) that the Secretary pursue an action under subsection 13 (a).  *Id.*  OSHA's determination that an imminent danger does not exist at the Plant is a prosecutorial decision that neither section 13 of the OSH Act, nor basic principles of prosecutorial discretion, permit this Court to review.

A finding of jurisdiction here would empower employees to hale OSHA into federal court at any time based only on their allegation of an imminent danger. The result would be that courts—not OSHA or the Secretary—would determine how to best protect workers and to allocate the agency's resources. Congress did not create a private right of action in these circumstances, and the Court should not recognize one.

## B.   Because Plaintiffs Do Not Allege the Requisite CSHO Recommendation, They Fail to State a Subsection 13(d) Claim.

Plaintiffs' Complaint also fails to state a claim that falls within the narrow scope of subsection 13(d). As discussed above, section 13 provides the OSH Act's "Procedures to Counteract Imminent Dangers." Pub. L. No. 91-596 § 13 (section title), 84 Stat. 1590, 1605 (codified at 29 U.S.C. § 662). Section 13 makes plain that a CSHO's conclusion that a condition or practice at a workplace creates an imminent danger is a *prerequisite* to the Secretary pursuing injunctive relief under section 13. This much is clear from subsection 13(c), which requires that "an inspector [who] concludes that conditions or practices" at a workplace meet the definition of "imminent danger" in § 13(a) "inform the affected employees and employers of the danger and that he is recommending to

the Secretary that relief be sought."  29 U.S.C. § 662(c); *see also* 29

C.F.R. § 1903.13 (the "inspector" means a CSHO).  The CSHO's

conclusion that an imminent danger exists—and communication of that

determination to affected employees and employers—thus prompts her

recommendation to the Secretary to bring a section 13 petition and puts

employees on notice of their potential cause of action should the

Secretary decline to do so.

Without a CSHO's recommendation to the Secretary "that *relief be*

*sought*" under Section 13, an employee cannot invoke subsection 13(d)

to challenge the reasonableness of the Secretary's "fail[ure] to *seek relief*

*under [that] section*."  29 U.S.C. § 662(c), (d) (emphasis added).  If a

CSHO has not found an imminent danger and communicated that

determination to affected employees and employers, she has not

recommended that the Secretary take a section 13 action, and there is

no Secretarial determination for the Court to review.

Courts discussing the OSH Act's imminent-danger procedures

have similarly highlighted the CSHO's subsection 13(c)

recommendation as a requisite step in the process.  *See, e.g.*, *Marshall*

*v. Daniel Constr. Co.*, 563 F.2d 707, 711 (5th Cir. 1977) ("Employees are

entitled to petition the federal district court for a writ of mandamus against the Secretary if he arbitrarily or capriciously fails to seek the injunctive relief *requested by the OSHA inspector*.") (emphasis added). Similarly courts have highlighted the CSHO's recommendation's role when describing the process for cases in which the Secretary accepts the recommendation. *Marshall v. Whirlpool Corp.*, 593 F.2d 715, 720 (6th Cir. 1979), *aff'd*, *Whirlpool Corp. v. Marshall*, 445 U.S. 1 (1980) (stating the requirements for Section 13 injunctions as "that the OSHA inspector conclude that the danger cannot be prevented through normal enforcement procedures, that the Secretary agree with the inspector's conclusion, and that the federal district court agree to issue the injunction").

This interpretation is supported by Section 13's place in the OSH Act's carefully calibrated enforcement scheme. *See, e.g.*, *United States v. Atl. Research Corp.*, 551 U.S. 128, 135 (2007) ("Statutes must be read as a whole." (cleaned up)). Section 13 contemplates imminent-danger proceedings while the regular citation process continues. The Secretary may bring a petition when imminent danger exists, meaning the danger could reasonably be expected to cause death or serious physical harm

"immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this chapter." 29 U.S.C. § 662(a). And the court may grant relief "pending the outcome of an enforcement proceeding pursuant to this chapter." *Id.* § 662(b). That relief is faster-acting and stronger medicine than that available elsewhere under the OSH Act. A court may issue injunctions or a temporary restraining order, *see id.*, and may "prohibit the employment or presence of any individual in locations or under conditions where such imminent danger exists," even including where necessary "a cessation of operations." *Id.* § 662(a). Those remedies are a stark contrast to the abatement requirements available under the OSH Act's regular citation regime, *see id.* § 658, with which a good-faith contesting employer need not comply until a final decision has been issued by OSHRC and, even then, sometimes not if abatement is beyond its control, *see id.* § 659(b)-(c).

That a CSHO's finding of that an imminent danger exists is a prerequisite for bringing a section 13 action reflects Congress's decision to bestow OSHA with the exclusive authority to enforce compliance with the OSH Act to the degree and by the means carefully delineated

26

in the Act.  It was reasonable for Congress to determine that imminent-danger proceedings and the powerful tools they bring with them should be available to private plaintiffs in only very limited circumstances. Nothing in the OSH Act suggests (as Plaintiffs do) that subsection 13(d) permits employees to ignore the procedure in subsection 13(c) and determine for themselves which conditions constitute an imminent danger under the OSH Act.  *See Daniel Constr. Co.*, 563 F.2d at 711 ("[a]t no point does the [OSH] Act permit workers to make a determination that a dangerous condition exists in fact").

Rather, subsection 13(d) is best read as a carefully limited exception to the unreviewable nature of prosecutorial decisions. Congress intended to ensure employees have recourse only when the Secretary unreasonably fails to seek judicial recourse after a CSHO has found an imminent danger.  Any other reading would threaten to inundate federal district courts with claims attempting to circumvent the OSH Act's administrative enforcement procedures and obtain immediate resolution of alleged concerns.  This would not only delegate to private parties the power to reshuffle OSHA's enforcement priorities and scarce resources, but bestow those private parties with some of the

most powerful tools in OSHA's arsenal—tools even the agency cannot access in its regular enforcement efforts.  Congress did not intend that. Subsection 13(d) is a salutary but limited check for those rare situations when the Secretary disagrees with a CSHO's subsection 13(c) recommendation.

Here, Plaintiffs do not allege in their Complaint that a CSHO found, or notified them of, conditions or practices at the Plant that constitute an imminent danger.  Nor do they allege that a CSHO recommended that the Secretary pursue a section 13 action.  Thus, their Complaint fails to allege the necessary statutory predicates. While Plaintiffs appear to argue that OSHA's personnel *should have found* that the conditions at the Plant pose an imminent danger, such a claim (even if assumed to be true) would not entitle Plaintiffs to relief under section 13.  Accordingly, Plaintiffs' Complaint fails to state a claim upon which relief can be granted and must be dismissed.

## C.   In the Alternative, The Complaint Does Not Plausibly Allege an Imminent Danger.

Even if the Court accepts Plaintiffs' position that the Court may grant mandamus relief based solely on their assertions that the

conditions at the Plant pose an imminent danger, Plaintiffs still fail to state a claim upon which relief can be granted.

To state a claim under Plaintiffs' conception of subsection 13(d), Plaintiffs would need to plead facts showing that the Secretary acted arbitrarily or capriciously by *not* finding an imminent danger or by finding one and then declining to file for injunctive relief or a temporary restraining order under section 13.  Either way, Plaintiffs would need to show that the Secretary's decision was "a clear error of judgment." *Envtl. Def. Ctr.,* 344 F.3d at 858 n.36.  And because subsection 13(d) authorizes only a writ of mandamus, Plaintiffs also would need to establish that the "clear error of judgment" warrants that extraordinary relief.

Plaintiffs fail to plead facts sufficient to meet that standard. According to Plaintiffs, Maid-Rite is not taking all steps possible to protect employees from exposure to COVID-19—including fully implementing the guidelines that OSHA and CDC jointly issued to advise meat and poultry processing employers on how to contain the spread of the virus.  But the Court need not accept Plaintiffs' legal conclusion that COVID-19 dangers are "imminent" in the Plant.  Nor

should it.  Conspicuously absent from the Complaint are any allegations as to when any of the alleged COVID-19 cases occurred.  Plaintiffs have thus not alleged any recent or ongoing cases.  Instead, Plaintiffs allege that "any day," Compl. ¶ 104, a single worker might transmit the virus to another worker and thereby potentially fuel an outbreak of COVID-19 at the Plant, and that the outbreak would cause serious injury and death, Compl. ¶ 103.  Even assuming, *arguendo*, that such "some day" allegations are sufficient to provide Plaintiffs with the standing they need to invoke the Court's Article III jurisdiction, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992), such allegations are intangible and do not present the sort of real and present risks needed to plausibly allege an "immediat[e]" danger.  29 U.S.C. § 662(a).

Nor do Plaintiffs allege a danger the imminence of which cannot "be eliminated through" enforcement procedures short of section 13 injunctive relief.  *Id.*  They make no allegation, plausible or not, as to how Maid-Rite would respond to a CSHO investigatory determination of imminent danger or other inspection or enforcement action informing it of hazards that need to be abated.  For example, they do not allege that the employer would decline to engage in voluntary corrective action,

assuming feasible corrective actions would exist, or otherwise explain how normal enforcement channels would prove inadequate.

Because the allegations in the Complaint are insufficient to establish that a reasonable person would determine that the workplace conditions and practices at the Plant clearly and indisputably pose an imminent danger, Plaintiffs must be dismissed under Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion

Defendants respectfully request that the Court grant their motion to dismiss.  Defendants further request that the Court set forth an expedited briefing schedule on Defendants' motion.

Respectfully submitted.

DAVID J. FREED
UNITED STATES ATTORNEY

Date: July 28, 2020

/s/ G. Michael Thiel
G. MICHAEL THIEL
Assistant U.S. Attorney
Atty. I.D. #PA 72926
235 N. Washington Ave., Ste. 311
Scranton, PA 18503
Phone: (570) 348-2800
mike.thiel@usdoj.gov

KATE S. O'SCANNLAIN
SOLICITOR OF LABOR
U.S. DEPARTMENT OF LABOR

/s/ Oscar L. Hampton III
OSCAR L. HAMPTON III
Regional Solicitor
Atty. I.D. #MO 36778
170 S. Independence Mall West
Suite 630 East
Philadelphia, PA 19106
(215) 861-5120
hampton.oscar@dol.gov

EDMUND C. BAIRD
Associate Solicitor for
 Occupational Safety and Health

RICHARD T. BUCHANAN
Deputy Regional Solicitor

MICHAEL P. DOYLE
Regional OSHA Counsel

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOES I, II, III, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:20-1260 |
| | ) | |
| EUGENE SCALIA, United States | ) | (JUDGE MANNION) |
| Secretary of Labor, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATION OF WORD COUNT
## PURSUANT TO L.R. 7.8(b)(2) and (3)

In accordance with Local Rule 7.8(b)(2) and (3), and the Court's Order of July 27, 2020 (ECF #16), I certify that the Brief in Support of Defendants' Motion to Dismiss the Complaint and Stay Hearing Pending Further Briefing does not contain more that 6,000 words, exclusive of the cover page, tables of content and authorities, and signature block.  The Microsoft Word word processing system on which the Brief was drafted indicates a total of 5,957 words.

Date: July 28, 2020

*/s/ Richard T. Buchanan*
Richard T. Buchanan
Co-counsel for Defendants

33

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOES I, II, III, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:20-1260 |
| | ) | |
| EUGENE SCALIA, United States | ) | (JUDGE MANNION) |
| Secretary of Labor, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania, and is a person of such age and discretion as to be competent to serve papers.

That on July 28, 2020, she served copies of the attached:

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

by ECF Filing upon:

Lerae Kroon, Esquire
Nina A. Menniti, Esquire
Samuel H. Datlof, Esquire

/s/ Christina M. Nihen
CHRISTINA M. NIHEN
Legal Assistant

34