UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOES I, II, III and FRIENDS OF FARMWORKERS, INC. D/B/A JUSTICE AT WORK IN ITS CAPACITY AS EMPLOYEE REPRESENTATIVE, <br><br> Plaintiffs, <br><br> EUGENE SCALIA, IN HIS OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF LABOR; OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, UNITED STATES notice DEPARTMENT OF LABOR, <br><br> Defendants. | Case No.: 3:20-cv-01260 |

## **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR DELAY**

The Government's eleventh-hour motion is simply an attempt to delay the inevitable hearing on Plaintiffs' request for emergency relief. This is all the more problematic because the Government's request is based on a tortured and rejected view of the relevant statute. Its motion should be denied.

The conditions at the Maid Rite plant are dire and warrant the speediest action. Dkt. No. 1 (Petition). Although COVID-19 has already spread amongst half the workforce, OSHA has failed to require the company take basic, necessary precautions, and is allowing Maid Rite to rotate in new workers, increasing the

1

likelihood of spread within the plant and community. All of this is in direct violation of OSHA's own meatpacking guidelines for protecting against COVID-19.

The Government's suggestion that its Motion to Dismiss justifies such a risk is sordid. Its reading of 29 U.S.C. § 662(d) is baseless.[1] It is inconsistent with the statute's plain text, logic, the case law, and legislative history.

This is to say nothing of the fact that if the Government truly believed a delay was warranted, it would have moved for a stay when it filed its motion to dismiss. Instead, the Government—which has been on notice of the scheduled hearing since last week and received an extension to prepare its motion—waited until the day before the hearing, after Plaintiffs informed the Government they were preparing witnesses and experts, to file this request. Such gamesmanship undercuts its claims its motion is in the interest of efficiency, and alone warrants denying the motion.[2]

## I. The Conditions At The Plant Require The Speediest Action.

The facts before the Court establish that because of OSHA's disregard of its own policies and recommendations, each passing day places Maid Rite workers,

---

[1] The Government refers to this provision as section 13(d).
[2] The Government's decision to submit as evidence a settlement offer Plaintiffs made under Federal Rule of Evidence 408 in order to support is motion to delay should be the potential basis for sanctions, not holding in its favor.

their families, and community at risk. Therefore, Plaintiffs and all Maid Rite workers and residents of the area would be unduly prejudiced by delay. Plaintiffs have explained that:

- Since the *start* of the COVID-19 pandemic, Maid Rite has supplied its workers cloth facemasks *three* times, Dkt. No. 1¶ 83 (Petition), even though OSHA decrees, "Employers who determine that cloth face coverings should be worn in the workplace … should ensure the cloth face coverings" always meet specific specifications, which in effect means the face coverings must be supplied by the employer, *id.* ¶ 71.

- Maid Rite has failed to make any changes to its production lines to space workers, requiring them to work on-top of one another and directly across from others, *id.* ¶¶ 84-85, even though OSHA indicates meatpacking plants should "modify[] the alignment of workstations, including along productions" so that the workers are spaced six-feet apart in all directions—or, where workers "*need* to perform tasks in tandem across from one another," workers should be spaced six feet apart on the sides and "physical barriers" should separate workers from their partners across from them, *id.* ¶¶ 72-74 (emphasis added).

- Maid Rite has failed to place markers on the floor to indicate how workers can socially distance in the hallways, *id.* ¶ 88, even though OSHA explains employers must facilitate workers "maintain[ing] six feet of distance … at all

3

times, including breaks," *id.* ¶ 75.

- Maid Rite has failed to provide additional opportunities for workers to attend to their personal hygiene, *id.* ¶¶ 89-90, even though OSHA recommends meatpacking plants should "provid[e] additional short breaks" for exactly that purpose, *id.* ¶ 77.

- Maid Rite has developed incentive programs to encourage sick workers to come in and infect their colleagues, *id.* ¶ 95, even though OSHA states employers should "modify[] … incentive programs" to avoid encouraging workers to come in sick, *id.* ¶ 78,

- And, Maid Rite regularly mixes workers, including bringing workers from other facilities into its production plant, increasing the number of exposures, *id.* ¶ 98, even though OSHA's meatpacking guidelines provide the opposite, that workers be "cohort[ed] [to] reduce the spread" of COVID-19, *id.* ¶ 79.

The Government does not truly contest any of these facts. Its declarant explains that Maid-Rite workers "typically wear …masks … and face shields," notably omitting who provides the masks. Dkt. No. 24-3 ¶ 7 (Declaration of Shannon M. Warner). She identifies "partitions in the lunchroom to promote social distancing," but nowhere else in the plant, and makes no reference to any distancing, in any direction, on the production line. *Id.* ¶ 8. Likewise, she notes the presence of "handwashing" stations, but makes no mention of workers' ability to

4

use them. *Id.* ¶ 10. She asserts that "one employee" was told "not to come to work" sick, but does not described any modifications Maid Rite made to its sick leave or bonus policies. *Id.* ¶ 8. The Government makes no statements whatsoever regarding Maid Rite's failure to cohort, *i.e.*, Maid Rite bringing in workers who do not regularly work at the Plant to join existing teams.

The Government's rationale for OSHA refusing to classify these conditions as an imminent danger are that *Maid Rite* says there have been no positive cases at the Plant since May 14, 2020, and that Maid Rite did not "report[] to OSHA" workers who had been hospitalized or died. *Id.* ¶ 12. However, under the OSH Act, the agency is not meant to "wait for an employee to die or become injured" before it acts. *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 12 (1980).

It is also entirely unclear whether Maid Rite was required or requested to provide OSHA information on hospitalizations or deaths. OSHA also offers no basis to believe Maid Rite has anywhere near complete or up-to-date information, no evidence family or community members exposed to the virus from spread at the plant have not been harmed, and no rationale why the potentially lifelong debilitating effects of COVID-19 short of hospitalization or death do not create an imminent danger. Perhaps more importantly, it does not contest that approximately half the workers at one point contracted the disease at the Plant. Dkt. No. 1 ¶ 81. That alone is evidence spread will occur again, particularly since Maid Rite has not

changed its practices and is regularly bringing in new workers from a county where spread is rampant. New York Times, *Pennsylvania Coronavirus Map and Case Count* (July 30, 2020)[3] (stating that Lackawanna County had 55 COVID-19 cases per 100,000 people over the last seven days).

The Government's request for delay amounts to just further disregard for these workers' health and safety. OSHA should have acted previously, which is why emergency relief from this Court is now warranted.

## II. OSHA's Legal Arguments Are Meritless.

The suggestion that the Court should delay the hearing in light of OSHA's Motion to Dismiss is particularly unwarranted because that motion is specious. Section 662(d) empowers workers or their representatives to "compel the Secretary to seek [] an order" to protect workers from an imminent danger, as well as "such further relief as may be appropriate." 29 U.S.C. § 662(d). The Government would have the Court disregard the latter clause entirely, and hold the former only provides a cause of action to compel an order against an imminent danger, if an inspector first recommends that the Secretary seek that order, and the Secretary overruled that recommendation. Dkt. No. 24, at 3 (Gov. Motion to Dismiss). This is despite the fact that § 662(d) in no way limits the cause of action to instances

---

[3] https://www.nytimes.com/interactive/2020/us/pennsylvania-coronavirus-cases.html.

where there is internal agency disagreement, but rather states workers should be able to check "the Secretary arbitrarily fail[ing] to seek relief" whenever that occurs. 29 U.S.C. § 662(d).

Therefore, to reach its reading, the Government claims the Secretary's authority to seek an order is limited to circumstances when an inspector recommends such an order—thus workers can only challenge the Secretary's authority after a recommendation occurs, otherwise no authority exists. Dkt. No. 24, at 24 (Gov. Motion to Dismiss). In other words, they would have the Court hold Congress conditioned the actions of a presidentially appointed, congressionally approved, politically accountable official on the reasoning of subordinate employees. Not only is that unheard of, but it is inconsistent with the plaint text of § 662(a)—which provides the Secretary his authority to seek an order against imminent dangers, and imposes *no* requirement that the Secretary first receive a recommendation that such an order is warranted.

Further, to accept the Government's view would effectively nullify subsection (d). It would allow the agency to instruct its inspectors to never recommend the Secretary use his authority. Under the Government's analysis, in that event, no worker could proceed under 29 U.S.C. § 662(d).

Moreover, the Government believes the only issue in a § 662(d) action is whether the Secretary's decision to overrule his inspector was arbitrary and

7

capricious. Dkt. No. 24, at 3 (Government Motion to Dismiss). But, those sorts of internal agency deliberations are subject to the deliberative process privilege and could never be accessed by workers to support a challenge.

As a result, numerous courts, including the most recent court to consider this statute, have held it allows workers to sue to expedite protections when OSHA is moving too slowly, not merely where an inspector has acted and the Secretary disagrees. A court held just three months ago that, "if OSHA fails to act quickly on [] information" about unsafe working conditions, workers can seek and "receive emergency relief" under 662(d). *Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, No. 5:20-CV-06063-DGK, 2020 WL 2145350, at *8 (W.D. Mo. May 5, 2020). Another recent decision explained 662(d) allows a worker whose complaint "was dismissed" entirely—so there was a finding against any sort or harm or violation—to sue. *Scott v. Sysco Food Serv. of Metro N.Y., L.L.C.*, No. CIV.A. 07-3656(SRC), 2007 WL 3170121, at *5 (D.N.J. Oct. 26, 2007). Yet another decision, this time of the vintage of Defendants' authority, explains § 662(d) allows courts to determine "whether a dangerous condition exists" that warrants action by the agency. *Marshall v. Klug & Smith Co.*, No. CIV. A77-3012, 1979 WL 23050, at *4 (D.N.D. Mar. 19, 1979).

The citation on which the primarily Government relies, a 1977 Fifth Circuit case, actually supports Plaintiffs' position. That case does not analyze 662(d), but

considers it as part of determining whether the OSH Act allows employees to refuse to work in unsafe working conditions. It goes through the legislative history of § 662 and explains the section was crafted to ensure *courts* could determine whether an injunction was required to protect workers. *Marshall v. Daniel Const. Co., Inc.*, 563 F.2d 707, 713 (5th Cir. 1977). The point of the procedures laid out in § 662 were not to tie workers' hands, but those of the Government. Congress did not want the Secretary (or his subordinate employees) to be solely empowered to determine whether imminent dangers exist and how best to respond to them. Congress properly recognized a role for the judiciary in protecting workers.

\* \* \*

The Government's motion for delay is untimely. Even were that not the case, it should be denied and tomorrow's hearing should go forward so that the judiciary can exercise its congressionally granted authority to protect workers. Such protections are essential in this case where the company is plainly refusing to take the steps necessary to protect against COVID-19. An outbreak has already occurred, and it will occur again if this Court does not act, especially given the conditions in the surrounding community and Maid Rite's decision to increase its workers' exposure to that risk.

Respectfully submitted this 30th day of July 2020.

s/ David S. Muraskin,
David Muraskin, D.C. Bar No. 1012451
Karla Gilbride, D.C. Bar No. 1005586
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Fax: (202) 232-7203
kgilbride@publicjustice.net
dmuraskin@publicjustice.net

Adrienne H. Spiegel, CA Bar No. 330482*
475 14th Street, Suite 610
Oakland, CA 94612
Telephone: (510) 622-8207
aspiegel@publicjustice.net

*Attorneys for Friends of Farmworkers, Inc., d/b/a Justice at Work*

**FRIENDS OF FARMWORKERS, INC., D/B/A JUSTICE AT WORK**
Lerae Kroon, PA Bar No. 325464
Nina Menniti, PA Bar No. 326828
Samuel Datlof, PA Bar No. 324716
990 Spring Garden St, Suite 300
Philadelphia, PA 19123
Telephone: (215) 733-0878
Fax: (215) 733-0878
lkroon@justiceatworklegalaid.org
nmenniti@justiceatworklegalaid.org
sdatlof@justiceatworklegalaid.org
*Attorneys for Jane Does I, II, and III*

**TOWARDS JUSTICE**
David H. Seligman, CO Bar No. 49394
Juno Turner, NY Bar No. 4491890*
Brianne Power, CO Bar No. 53730
1410 High St., Suite 300
Denver, CO 80218
Telephone.: 720-239-2606
david@towardsjustice.org
juno@towardsjustice.org
brianne@towardsjustice.org


**NICHOLS KASTER, PLLP**
Matthew H. Morgan, MN Bar No. 304657
Anna P. Prakash, MN Bar No. 0351362*
4600 IDS Center
80 S. Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
morgan@nka.com
aprakash@nka.com

*Attorneys for Friends of Farmworkers, Inc., d/b/a Justice at Work*
* application for admission *pro hac vice* forthcoming

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused this brief to be filed be filed in ECF, which caused a copy to be served on counsel for all parties.

s/ David S. Muraskin,
David Muraskin, D.C. Bar No. 1012451
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Fax: (202) 232-7203
dmuraskin@publicjustice.net
