# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOES I, II, III and FRIENDS OF FARMWORKERS, INC. D/B/A JUSTICE AT WORK IN ITS CAPACITY AS EMPLOYEE REPRESENTATIVE,<br><br>Plaintiffs,<br><br>EUGENE SCALIA, IN HIS OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF LABOR; OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, UNITED STATES notice DEPARTMENT OF LABOR,<br><br>Defendants. | Case No.: 3:20-cv-01260 |

**PLAINTIFFS' POST-HEARING REPLY BRIEF**

Defendants contend workers have no redress if they face an imminent danger and OSHA declines to act. In the midst of a pandemic that OSHA admits is "difficult" for the agency to handle, (Tr. 30:7-9, Dkt. No. 43-1), OSHA asks this Court to hold workers' only "role" in protecting themselves is to "complain[]" and suffer the consequences when others fail to act. (Defs.' Br., Dkt. No. 46 at 10.)

However, the OSH Act, in 29 U.S.C. § 662(d), struck a different balance, and this case demonstrates precisely why. Here, the Wilkes-Barre Area Office has established a policy that the failure to "social[ly] distance [at a meatpacking plant] could" never "be enough to satisfy the imminent danger definition." (Tr. 174:21-25.) This is arbitrary and capricious. OSHA knows that social distancing is not only the "best strateg[y]" to protect meatpacking workers from COVID-19, but also that this control must be "prioritize[d]" above all others because outbreaks have consistently followed at plants that do not allow distancing, even when implementing other protections. (Plfs.' Br., Dkt. No. 43, at 9-10.)

Nonetheless, because the Area Office has refused to intervene due to its arbitrary and capricious policy, Maid-Rite workers continue to operate "shoulder-to-shoulder" without any barriers between them (Dkt. No. 43-2 ¶¶ 14-15; *see also* Dkt. No. 43-3 ¶ 10), nearly five months after their first OSHA complaint. When the virus next enters the plant, there is every reason to think it would proliferate rapidly, causing death and serious injury. Section 662(d) exists to reverse such a policy that

1

allows this imminent danger to persist.

### A. This Court Has Jurisdiction to Hear Plaintiffs' Claim.

Section 662(d) provides for judicial intervention "[i]f the Secretary arbitrarily or capriciously fails to seek relief under this section." Under this plain language, § 662(d) can be invoked if the Secretary fails to act 1) by overturning a recommendation made pursuant to § 662(c) *or* 2) where no recommendation has been made.

That § 662(d) references "the Secretary's" failure to act does not alter this analysis. First, as Plaintiffs argued in their post-hearing brief, nothing in the statute suggests that the Secretary can only act under § 662(d) if the inspector makes a recommendation under § 662(c). Second, the statute permits claims against the government even where the decision about whether to act has not reached the Secretary of Labor's desk. Since 1950, "the Secretary" has meant any person to whom he has delegated authority. *Reorganization Plan No. 6 of 1950*, 15 Fed. Reg. 3174 (May 24, 1950). Thus, § 662(d) creates a cause of action if any OSHA official fails to find an imminent danger, whether that official is the first or last person responsible.

Defendants' alternative reading—that § 662(d) "limits a court's inquiry to . . . whether the Secretary appropriately considered th[e] findings" of an inspector that an imminent danger exists—is also unworkable. (Defs.' Br. at 11.) OSHA

regularly conceals such deliberations. Indeed, it recently successfully argued in this Circuit that OSHA's "intra-agency documents reflecting [its] decision to sue" are protected by the deliberative process privilege. *Acosta v. Fairmount Foundry, Inc.*, No. CV 17-4302, 2019 WL 196543, at *4 (E.D. Pa. Jan. 14, 2019).

Further, the most recent authority on the matter demands Defendants' reading be rejected. In *Rural Community Workers Alliance v. Smithfield Foods, Inc.*, meatpacking workers raised common law claims, seeking an injunction to require their employer to protect them from COVID-19. No. 5:20-CV-06063-DGK, 2020 WL 2145350 (W.D. Mo. May 5, 2020). The court concluded that OSHA had primary jurisdiction over the workers' complaints because, "if OSHA fails to act quickly on . . . information" regarding imminent dangers, "Plaintiffs have a remedy: they may receive emergency relief through OSHA's statutory framework." *Id.* at *8. Defendants correctly point out that plaintiffs' counsel argued in that case that § 662(d) was too cumbersome of a mechanism to justify dismissal based on primary jurisdiction, but the court *disagreed*, urging plaintiffs to take up their concerns with OSHA, including through § 662(d). It cannot be that workers are denied equitable relief against their employer because they should work through OSHA, and also cannot seek equitable relief if OSHA fails to act.

Defendants' argument in the alternative that this Court lacks jurisdiction because Plaintiffs lack standing has even less merit. OSHA already determined

Plaintiffs were "employee[s] or employee[s'] representative[s]" when they filed their OSHA complaint. (Tr. 124:19-20, 138:19-139:13.) Defendants cannot both insist Plaintiffs constantly re-prove that fact to establish their standing, and argue Plaintiffs are not entitled to submit declarations to do so. (*E.g.*, Defs.' MTS, Dkt. No. 44.) Defendants' additional suggestion that Plaintiffs lack standing because they do not face an "imminent danger," (Defs.' Br. at 24), fails to recognize "[t]he standing requirement is analytically distinct from the merits," *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016).

### B. **Defendants Are Arbitrarily and Capriciously Failing to Protect Maid-Rite Workers From an Imminent Danger.**

Plaintiffs have proved their claim. Defendants admit the Wilkes-Barre Area Office has declared the absence of social distancing on meat production lines can *never* create an imminent danger. (Tr. 174:21-25.). This policy is directly contrary to OSHA and CDC's findings that the absence of distancing will lead to COVID-19's spread. Thus, the office is leaving workers in conditions it knows are reasonably likely to cause death or serious injury. That decision is not the product of "reason[ed]" decision making and is contrary to the government's own evidence and guidelines, making it arbitrary and capricious. *See CBS Corp. v. Fed. Commc'ns Comm'n*, 663 F.3d 122, 126 (3d Cir. 2011).

The Court need look no further than OSHA's and the CDC's own guidance.[1] The CDC's Epi Aid lays out the conditions that gave rise to an outbreak that closed a Sioux Falls meatpacking plant for weeks. Employees were "screened before entering the plant" both for temperature and symptoms, "instructed to return home" if they had "a fever or symptoms," separated by "barriers" on the production line, provided protected spaces "[i]n all lunchrooms and break areas," received "adjust[ed] schedules to facilitate distancing," given additional "hand sanitizer dispensers," assigned additional staff to "sanitize commonly touched surfaces more frequently," and offered "informational flyers."[2] Yet the facility still suffered a "large outbreak" due to the "numerous employees [who] tended to work <6 feet (2 meters) from one another on the production line."[3]

Put another way, the Sioux Falls facility had *much* more extensive protections than those the Wilkes-Barre Area Office relied on to conclude Maid-Rite was safe. (Defs.' Br. 16-18.) But, without distancing on the production line, those controls were insufficient.

---

[1] As Defendants acknowledge, OSHA has been working with the CDC to develop its COVID-19 guidelines. (Defs.' Br. 15 n.9, 20).

[2] Michael Grant, et al., Strategies to Reduce COVID-19 Transmission at the Smithfield Foods Sioux Falls Pork Plant, (April 22, 2020), available at https://covid.sd.gov/docs/smithfield_recs.pdf.

[3] Jonathan Steinberg et al., COVID-19 Outbreak Among Employees at a Meat Processing Facility — South Dakota, March–April 2020, MMWR Morb Mortal Wkly Rep 2020;69:1015–1019. DOI: http://dx.doi.org/10.15585/mmwr.mm6931a2.

Recent hospitalizations are not central to proving an "imminent danger." *See* (Defs.' Br. 21.) Unlike in *Reich v. Dayton Tire*, where the workers failed to demonstrate "injuries that have occurred" due to noncompliance, or a "real risk of future injury," 853 F. Supp. 376, 380 (W.D. Okla. 1994), in Maid-Rite, an outbreak has already happened. Defendants admit Maid-Rite reported COVID-19 cases among its workers as recently as mid-May, when its COVID-19 "protections" should have already been in place. (Defs.' Br. 21.) And all the evidence indicates additional spread will "be inevitable" "[o]nce the virus is present" again. (Dkt. No. 43-4 ¶ 20 (Decl. Dr. Perry).) The fact that the virus has by all accounts not entered the facility recently is fortunate, but it has nothing to do with the presence or absence of protections within the plant, which are designed to mitigate spread once the virus does enter the facility.

OSHA's argument that Plaintiffs wrongly focus on distancing because no "single protective measure" is necessary and any "proper mix of protective measures" can be sufficient, (Defs.' Br. 20), is belied by the government's analysis. Plaintiffs are also not insisting on "full[] implementat[ion] [of] each recommended abatement measure," *id.* at 21, but rather contend that, in light of the CDC studies, the absence of distancing itself could and does present an imminent danger at Maid-Rite, especially considering everything else Maid-Rite is doing wrong.

For these reasons, too, the policy that the absence of distancing can *never* amount to an imminent danger is the very definition of an arbitrary and capricious rule. It fails to recognize "an important aspect of the problem," "runs counter to the evidence before the agency," and is "implausible." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

OSHA also cannot deny the arbitrary and capricious manner in which it conducted its inspection of Maid-Rite. It suggests that perhaps "special preparations" were necessary for the inspection or that advance notice allowed for a more "effective and thorough inspection," 29 C.F.R. § 1903.6(a), but it fails to offer any explanation for why either is the case. (Defs.' Br. at 23.) And if the reason was because it feared for the safety of its inspector, it is difficult to see how conditions at the plant cannot constitute an "imminent danger" to workers. All advance notice did was allow Maid-Rite to conceal the extent of its failure to socially distance workers, further undermining OSHA's determination here.

Thus, this Court's intervention is required under § 662(d). It should reverse the Area Office's arbitrary and capricious rule and instruct OSHA to treat the lack of distancing as the imminent danger it is.

Respectfully submitted this 26th day of August 2020.

                                                      s/ David H. Seligman

                                                     David H. Seligman, CO Bar No. 49394
                                                     Juno Turner, NY Bar No. 4491890

Brianne Power, CO Bar No. 53730
1410 High St., Suite 300
Denver, CO 80218
Telephone.: 720-239-2606
david@towardsjustice.org
juno@towardsjustice.org
brianne@towardsjustice.org
**TOWARDS JUSTICE**

David Muraskin, D.C. Bar No. 1012451
Karla Gilbride, D.C. Bar No. 1005586
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Fax: (202) 232-7203
kgilbride@publicjustice.net
dmuraskin@publicjustice.net

Adrienne H. Spiegel, CA Bar No. 330482
475 14th Street, Suite 610
Oakland, CA 94612
Telephone: (510) 622-8207
aspiegel@publicjustice.net

*Attorneys for Friends of Farmworkers, Inc., d/b/a Justice at Work*

**FRIENDS OF FARMWORKERS, INC., D/B/A JUSTICE AT WORK**
Lerae Kroon, PA Bar No. 325464
Nina Menniti, PA Bar No. 326828
Samuel Datlof, PA Bar No. 324716
990 Spring Garden St, Suite 300
Philadelphia, PA 19123
Telephone: (215) 733-0878
Fax: (215) 733-0878
lkroon@justiceatworklegalaid.org
nmenniti@justiceatworklegalaid.org
sdatlof@justiceatworklegalaid.org

8

*Attorneys for Jane Does I, II, and III*

**NICHOLS KASTER, PLLP**
Matthew H. Morgan, MN Bar No. 304657
Anna P. Prakash, MN Bar No. 0351362
4600 IDS Center
80 S. Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
morgan@nka.com
aprakash@nka.com

*Attorneys for Friends of Farmworkers, Inc., d/b/a Justice at Work*

## CERTIFICATE OF SERVICE

I hereby certify that I caused this brief to be filed be filed in ECF, which caused a copy to be served on counsel for all parties.

s/ David H. Seligman
David H. Seligman, CO Bar No. 49394
1410 High St., Suite 300
Denver, CO 80218
Telephone: 720-239-2606
david@towardsjustice.org
juno@towardsjustice.org
brianne@towardsjustice.org
**TOWARDS JUSTICE**