## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JANE DOES I, II, III and FRIENDS
OF FARMWORKERS, INC. D/B/A
JUSTICE AT WORK IN ITS
CAPACITY AS EMPLOYEE
REPRESENTATIVE,

              Plaintiffs,

EUGENE SCALIA, IN HIS OFFICIAL
CAPACITY AS UNITED STATES
SECRETARY OF LABOR;
OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION,
UNITED STATES notice
DEPARTMENT OF LABOR,

              Defendants.

Case No.: 3:20-cv-01260

## PLAINTIFFS' RESPONSE TO DEFENDANTS' "SUGGESTION OF MOOTNESS"

## INTRODUCTION

Plaintiffs brought this action under 29 U.S.C. § 662(d), a provision of the Occupational Safety and Health Act designed to allow judicial remedies against the Occupational Safety and Health Administration (OSHA) when it declines to protect workers from imminent dangers. Plaintiffs have repeatedly informed OSHA that their workplace contains, and continues to subject them to, various imminent dangers. These dangers include requiring workers along production lines to work elbow to elbow without opportunities for physical distancing, a practice that has resulted in deadly outbreaks at meat-processing plants around the country. *See, e.g.*, ECF Doc. 45 at 5; ECF Doc. 52.

OSHA has not denied the essential facts and has not denied the dangers that Maid-Rite's practices create for Maid-Rite's workers. In fact, OSHA's inspection of the Maid-Rite facility—even though undermined by OSHA arbitrarily and capriciously giving Maid-Rite advance notice, ECF Doc. 43 at 22—revealed that "[e]mployees were not social distancing in production areas, putting workers at risk for exposure to SARS-CoV-2." ECF Doc. 51-2. Yet, OSHA continually refused to take any action to protect workers at the Maid-Rite Plant, only going as far as to "bring Maid-Rite's attention" to strategies used to protect workers at other facilities. *See, e.g.*, *id.*

A lot has changed over the past week, however. While COVID-19 continues

1

to rage across the country and meat-processing workers remain particularly vulnerable, on Friday, January 29, OSHA issued updated COVID-19 guidance for employers, U.S. Dep't of Labor, OSHA, *Protecting Workers: Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace* (Updated Jan. 29, 2021), https://bit.ly/3j4oeYg ("Updated Guidance"), due to instructions from President Biden.[1] The Updated Guidance bears directly on some of the core issues in this case. Among other things, the Updated Guidance specifies that employers should increase physical space "between workers at the worksite to at least 6 feet" and that this is necessary even if it will require "modifying the workspace or slowing production lines." *Id.*

As OSHA's Updated Guidance reinforces, Maid-Rite's refusal to allow spacing along production lines constitutes an ongoing imminent danger to workers at the facility. There is also every reason to believe that if OSHA were to conduct a new inspection of the Maid-Rite facility in light of the Updated Guidance, it would come to a different conclusion than it did in early December 2020. But currently before this Court is a January 12, 2020 filing wherein Defendants argued to this

---

[1] Exec. Order on Protecting Worker Health & Safety (Jan. 21, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/21/executive-order-protecting-worker-health-and-safety/ (providing, among other things, that OSHA shall "issue, within 2 weeks of the date of this order and in conjunction or consultation with the heads of any other appropriate executive departments and agencies (agencies), revised guidance to employers on workplace safety during the COVID-19 pandemic").

Court that they had unilaterally stripped this Court of jurisdiction by choosing to formalize their decision not to act days before the change in administration. ECF Doc. 53 (Defs.' Br.).

For the reasons explained in Part I of this response, even without the Updated Guidance, this case is not moot. OSHA's argument that the agency can act unilaterally and moot a case at its discretion is contrary to the language and purposes of § 662(d). Notwithstanding OSHA's arbitrary and capricious failure to intervene, Maid-Rite's practices continue to constitute an imminent danger to workers. Section 662(d) was designed as a check on OSHA's failure to act in precisely these circumstances. It formalizing that failure does not change § 662(d)'s reach. Moreover, even if OSHA's decision not to issue a citation deprives the Court of authority to order OSHA to seek an imminent danger order under § 662(b), § 662(d) allows the Court to order "further relief as may be appropriate," including a new inspection. And, under the "capable of repetition yet evading review" exception to mootness, this Court should adjudicate this action to prevent OSHA's continued failure to act in the future.

In Part II, this response describes the remedies available to the Court in the wake of the conflicting events of the past two months, including (1) OSHA's decision not to issue a citation to Maid-Rite in December 2020, and (2) OSHA's issuance of Updated Guidance in January 2021 that directly bears on the conditions

at the Maid-Rite plant. Considering the imminent danger that Maid-Rite continues to present to workers and OSHA's persistent arbitrary and capricious conduct amplified by its own revised view of the science, the Court should order that OSHA seek an imminent danger order under § 662(b) or reinspect Maid-Rite under the Updated Guidance. Before deciding what steps are appropriate to redress OSHA's failures, the Court could also stay resolution of this matter and order the parties to mediate their dispute and to assess whether OSHA's Updated Guidance provides a basis for an out-of-court resolution.[2]

## ARGUMENT

**(I)    This Action is Not Moot.**

**(A)    The Court Still May Order OSHA to Resolve the Imminent Danger That Continues to Confront Maid-Rites Workers.**

Defendants begin their argument with the strawman assertion that the Court does not have authority to review Defendants' decision not to issue a citation to Maid-Rite. Defs.' Br. at 4. Of course, Defendants' decision to issue or not issue a citation to Maid-Rite is not the subject of this litigation. This case is not about how much money OSHA has required Maid-Rite to pay (or not pay) for its violations. This case is about OSHA's ongoing decision not to protect workers at the Maid-

---

[2] Plaintiffs' counsel conferred with Defendants' counsel today about the possibility of a stay, and Defendants' counsel expressed opposition. Plaintiffs' counsel remains optimistic, however, that because of the recent Updated Guidance, an out-of-court resolution is achievable.

Rite facility from the ever-present imminent dangers posed by Maid-Rite's working conditions.

Defendants argue, however, that by refusing to issue a citation, they have effectively foreclosed their own ability to seek relief for workers from imminent dangers under § 662(a) and (b) and therefore also stripped this Court of its authority to issue relief under § 662(d), even if the Court were to conclude that OSHA had arbitrarily and capriciously failed to address an imminent danger. But § 662(d) exists for situations in which OSHA "arbitrarily or capriciously fails to seek relief" for workers from imminent dangers under the processes spelled out in § 662(a) and (b). In other words, OSHA's failure to act is the *reason for* litigation under § 662(d), not a reason to moot it. Reading the statute otherwise would permit OSHA to negate any § 662(d) action simply by expediting its enforcement proceedings. 29 C.F.R. § 1903.14(a) (providing that citation decisions can be made at any point before six months after the "occurrence of any alleged violation"). It is contrary to the purposes of § 662(d) to allow OSHA's extended pattern of arbitrary and capricious conduct, including a decision not to issue a citation, to tie the court's hands in ordering relief where an imminent danger exists.

The text of the statute is consistent with allowing Plaintiffs' § 662(d) action to proceed. While § 662(b) allows OSHA to seek relief in court "pending the outcome of an enforcement proceeding," the procedure outlined in § 662(d) is not

tied to or limited by a pending enforcement proceeding. Section 662(d) allows workers and their representatives to seek relief in court when OSHA "arbitrarily or capriciously fails to seek relief" to protect them from ongoing imminent dangers. Nothing in that provision prevents workers from invoking the statute because OSHA has finalized its decision not to seek relief. Indeed, as discussed more below, § 662(d) allows the Court to order "further relief as may be appropriate" indicating that the Court could order OSHA to initiate or reinitiate a proceeding and to seek relief under § 662(b). *See, e.g.*, 29 C.F.R. § 1903.3(a) (setting forth OSHA's wide authority to initiate inspections).

Defendants argue that *Sears, Roebuck & Co. v. Carpet, Linoleum, Soft Tile & Resilient Floor Covering Layers, Local Union No. 419, AFL-CIO,* 397 U.S. 655 (1970), suggests this action has been mooted by OSHA's decision not to cite Maid-Rite. In fact, the contrast between the language of 29 U.S.C. § 662 and 29 U.S.C. § 160(j), the provision of the National Labor Relations Act at issue in *Sears*, supports the Court's jurisdiction to resolve this case.

Under the plain language of § 160(j) any injunctive relief issued expires upon the resolution of the Board's enforcement proceeding, 29 U.S.C. § 160(j) (providing for "temporary relief or restraining order"). In contrast, were the Court to grant relief under § 662(d), nothing in the text suggests that relief expires upon OSHA's resolution of an enforcement proceeding, 29 U.S.C. § 662(b) ("injunctive

relief *or* temporary restraining order" (emphasis added)). Had Congress wanted to limit courts' ability to obtain or issue orders against imminent dangers in workplaces to the period before OSHA finalizes an investigation, the language in § 662 would have mirrored § 160. Because Congress acted otherwise, the Court should conclude § 662 is broader and allows for relief regardless of OSHA's assertion that its work is complete.

More importantly, however, the reasoning in *Sears* turned on the Supreme Court's observation that § 160(j) was designed "to supplement the pre-existing . . . power of the [National Labor Relations] Board" by providing the Board with a tool to obtain injunctive relief in court pending the Board's final adjudication of a matter. *Id*. The scheme set out in § 662 is fundamentally different because the injunctive relief available to OSHA is not subject to OSHA's unfettered discretion. Rather, § 662(d) provides that a Court may intervene to order OSHA to protect workers from imminent dangers. Thus, while it makes sense to allow the National Labor Relations Board to moot consideration of a § 160(j) proceeding—a proceeding that the Board is free to initiate or not initiate on whatever grounds it wishes—it does not make sense to allow OSHA to moot a § 662(d) proceeding initiated by workers to challenge the agency's decision not to pursue injunctive remedies.

**(B)    Even if Relief Under 29 U.S.C. § 662(a) and (b) Is No Longer Available, the Court May Order Other Remedies to Protect**

7

**Workers.**

Even if the Court were to determine OSHA's decision not to issue a citation means that the Court cannot order OSHA to seek an imminent danger order because it reads § 662(a)-(b) as requiring a pending proceeding, this does not mean that this action is moot. Section 662(d) allows the Court to order OSHA to seek an imminent danger order and to provide "further relief as may be appropriate." Precisely because of the absurd results that would follow from allowing OSHA to unilaterally moot proceedings challenging its own arbitrary and capricious conduct, the Court should read § 662(d)'s "further relief as may be appropriate" language broadly.

In this case, regardless of whether the Court can protect workers from imminent dangers by ordering OSHA to seek a § 662(b) order, there are other remedies that may address OSHA's arbitrary and capricious conduct. The Court could, for example, order that OSHA conduct a new inspection, this time without advance notice, to review whether an imminent danger exists under OSHA's Updated Guidance. 29 C.F.R. § 1903.3(a) (providing that OSHA can initiate an inspection without a new formal complaint).

In Part II below, Petitioners further describe remedies available to the Court at this juncture, but the language of § 662(d) allowing for "further relief as may be appropriate," leaves the Court with substantial discretion to order remedies to

protect workers and address OSHA's conduct. The availability of those remedies reinforces that this case is not moot.

### (C)    These Circumstances Are Capable of Repetition Yet Avoiding Review

Even if this case were otherwise mooted by OSHA's unilateral decision to close its investigation, OSHA's conduct would bring the case within the well-established exception to mootness for disputes that are capable of repetition yet evading review. The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Federal Election Commission v. Wisconsin Right To Life, Inc.* 551 U.S. 449, 462 (2007).

That doctrine was first announced in *Southern Pacific Terminal Company v. Interstate Commerce Commission*, 219 U.S. 498, 514 (1911), the facts of which are strikingly similar to this case. There, a federal agency issued a time limited order. While a challenge to that order was pending, the agency claimed the term of the order "ha[d] expired, and that, the case having thereby come moot, the appeal should be dismissed." *S. Pac. Id.* at 514. The Supreme Court determined that jurisdiction would not be stripped "by shortterms orders, capable of repetition, yet evading review." *Id.* The parties must have a mechanism to "have their rights determined." *Id.*

Of a more recent vintage, in *Wisconsin Right To Life*, the Court considered an as-applied challenge to a rule prohibiting certain electoral advertisements. 551 U.S. at 461. The FEC argued that because the "election has passed" and the would-be advertiser could not demonstrate the same issues would be present in future ads, the case was moot. *Id.* at 462. The Court disagreed, stating the case fit "comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *Id.* It would be unreasonable to expect litigation to be complete within a "2-year window between elections." *Id.* This was self-evident by the fact that four years had "come and gone" during the pendency of *Wisconsin Right to Life*, confirming it would be improper to hold the case moot. *Id.* Moreover, because the would-be advertiser "credibly claim[ed]" engaging in political advertisements is part of its regular activities, it risked being subject to the same rule in the future. *Id.* at 463.

This action also meets this test. First, "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration." *Id.* at 462. Under OSHA's logic, workers have at most six months to pursue a 29 U.S.C. § 662(d) claim, as that is the amount of time the agency has to reach an enforcement decision. *See* Defs.' Br. at 13. The notion that Plaintiffs could have brought their suit, received a decision, proceeded through appeal, and closed out the time for Supreme Court review within no more than six months is absurd. *Belitskus v.*

*Pizzingrilli*, 343 F.3d 632, 649 (3d Cir. 2003) (election campaign too short a period to allow for litigation). The out-of-circuit case OSHA cites concerned litigation "of national importance" regarding the "temporary appointment to the United States Senate," for which the court recognized there are special procedures to expedite. *Hamamoto v. Ige*, 881 F.3d 719, 723 (9th Cir. 2018). Given the unique facts of that case, the Court held that although "years" is normally insufficient to litigate a matter, "two years and five months" would be sufficient to resolve whether a Senator was legally serving. *Id*. Leaving aside the differences in the cases, that is nearly five times as long as OSHA claims Plaintiffs have to litigate any § 662(d) action.

Second, "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wisconsin Right To Life*, 551 U.S. at 462. Plaintiffs have credibly claimed the conditions at Maid-Rite remain unchanged, *see, e.g.*, ECF Doc. 52-3, meaning Maid-Rite workers and OSHA are likely to have a future dispute regarding whether OSHA should protect Maid-Rite workers from an imminent danger under § 662. OSHA's argument that because each OSHA complaint is considered "at the time" it is made and factual nuances may distinguish any future complaint from the current complaint, Defs.' Br. at 12, does not change this analysis. The Court in *Wisconsin Right to Life* explained that it was irrelevant that particular future advertisements might differ from the ones at issue

11

in the litigation. There need not be a "repetition of every legally relevant characteristic," so long as the same parties might have a new dispute largely similar to the one currently before the court. *Id.* at 463 (cleaned up).

Indeed, under OSHA's logic no plaintiff could ever obtain a final judgment on a § 662(d) claim, which is reason alone to reject OSHA's argument. According to OSHA, a plaintiff would have to litigate the entire action before OSHA reached an enforcement decision, as once that occurs OSHA can argue that the original § 662(d) case is moot. The Third Circuit has explained that where "a finding that [a particular] case is moot would essentially doom all challenges" the courts should assume an equivalent dispute between the parties will recur. *Belitskus*, 343 F.3d at 649 n.11 (citing *Arkansas AFL–CIO v. Federal Communications Comm'n*, 11 F.3d 1430, 1436 (8th Cir.1993)).

**(II)   The Court Should Order Relief That Protects Workers and Allows OSHA to Apply Its Updated Guidance.**

For the reasons explained above, the Court has discretion to order OSHA to seek an imminent danger order to protect workers at the Maid-Rite plant from ongoing imminent dangers. As Plaintiffs have articulated throughout this action, Defendants' conduct has been arbitrary and capricious, and the conditions at Maid-Rite constitute an imminent danger. That entitles Petitioners to their requested relief.

There are, however, alternative remedies available, which would be consistent with the language of § 662(d), permitting "further relief as may be appropriate," and which would also take account of the dramatic recent shift in OSHA's guidance over the past week.

First, the Court could order that OSHA re-inspect Maid-Rite, this time without providing advance notice, consistent with OSHA's Updated Guidance. OSHA says that "compelling another inspection at this juncture would be futile and do nothing to change the determination." Defs.' Br. at 11. But while conditions at the Plant have not changed, OSHA's own guidance has. The agency has now clarified that employers like meat-processing plants must space workers along production lines, even when doing so requires changes to production practices. Other measures, like masks or even placing plastic barriers between workers are not, on their own, sufficient in workplaces where workers *can* be placed more than six feet apart.

Second, before ordering a re-inspection, the Court could stay this litigation and order the parties to mediate regarding this dispute and any impact that the Updated Guidance may have on it. The Updated Guidance marks a clear shift in OSHA's appreciation of the dangers of physical distancing along production lines in meat-processing plants. That shift presents a promising opportunity for out-of-court resolution.

## CONCLUSION

For all of the reasons stated above, this case is not moot. The Court should order that OSHA pursue an imminent danger order under § 662(b). If the Court declines to issue such an order, the Court should alternatively order a re-inspection or stay the litigation and order mediation in light of OSHA's Updated Guidance.

s/ David H. Seligman
David H. Seligman, CO Bar No. 49394
Juno Turner, NY Bar No. 4491890
Brianne Power, CO Bar No. 53730
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
Telephone.: 720-239-2606
david@towardsjustice.org
juno@towardsjustice.org
brianne@towardsjustice.org

David Muraskin, D.C. Bar No. 1012451
Karla Gilbride, D.C. Bar No. 1005586
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Fax: (202) 232-7203
kgilbride@publicjustice.net
dmuraskin@publicjustice.net

Adrienne H. Spiegel, CA Bar No. 330482
**PUBLIC JUSTICE, P.C.**
475 14th Street, Suite 610
Oakland, CA 94612
Telephone: (510) 622-8207
aspiegel@publicjustice.net

*Attorneys for Friends of Farmworkers, Inc.,*

14

*d/b/a Justice at Work*

Lerae Kroon, PA Bar No. 325464
Nina Menniti, PA Bar No. 326828
Samuel Datlof, PA Bar No. 324716
**FRIENDS OF FARMWORKERS, INC.,
D/B/A JUSTICE AT WORK**
990 Spring Garden St, Suite 300
Philadelphia, PA 19123
Telephone: (215) 733-0878
Fax: (215) 733-0878
lkroon@justiceatworklegalaid.org
nmenniti@justiceatworklegalaid.org
sdatlof@justiceatworklegalaid.org
*Attorneys for Jane Does I, II, and III*

Matthew H. Morgan, MN Bar No. 304657
Anna P. Prakash, MN Bar No. 0351362
**NICHOLS KASTER, PLLP**
4600 IDS Center
80 S. Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
morgan@nka.com
aprakash@nka.com

*Attorneys for Friends of Farmworkers, Inc.,
d/b/a Justice at Work*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused this brief to be filed be filed in ECF, which

caused a copy to be served on counsel for all parties.

s/ David H. Seligman
David H. Seligman, CO Bar No. 49394
**TOWARDS JUSTICE**
1410 High St., Suite 300
Denver, CO 80218
Telephone: 720-239-2606
david@towardsjustice.org
juno@towardsjustice.org
brianne@towardsjustice.org

16