## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOES I, II, III, et al.,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:20-1260** |
| **v.** | : | **(JUDGE MANNION)** |
| **EUGENE SCALIA, United States Secretary of Labor, et al.,** | : | |
| | : | |
| **Defendants** | | |

## <u>MEMORANDUM</u>

Presently before the court is a complaint filed by plaintiffs Jane Does I, II, and III and Friends of Farmworkers, Inc. d/b/a Justice at Work (collectively, "Plaintiffs"), which seeks a writ of mandamus pursuant to Section 13(d) of the Occupational Safety and Health Act of 1970 (the "Act"), 29 U.S.C. §662(d), compelling defendants the Secretary of Labor Eugene Scalia (the "Secretary") and the Occupational Safety and Health Administration ("OSHA"), (collectively, "Defendants"), to seek a court order that directs Plaintiffs' employer, Maid-Rite Specialty Foods (the "Plant"), to take steps to abate imminent dangers to its employees related to the transmission of COVID-19.[1] (Doc. 1). Defendants have filed a motion to dismiss, (Doc. 23),

---

[1] The court notes that the Secretary has delegated most of his responsibilities under the Act to the Assistant Secretary of OSHA. *See*

as well as a motion to strike certain exhibits attached to Plaintiffs' post-hearing brief, (Doc. 44).

In this case of first impression, the court is called upon to determine whether a district court has jurisdiction over a complaint in mandamus pursuant to Section 13(d) of the Act where the Secretary has not received a recommendation to take legal action from an OSHA inspector and, accordingly, has not rejected a recommendation to initiate imminent danger proceedings. For the reasons set forth below, the court finds that it does not and, accordingly, Defendants' motion to dismiss will be **GRANTED** and the Complaint will be **DISMISSED**. Additionally, the court will **GRANT** the motion to strike.

## I.   BACKGROUND

As by now many courts have noted, coronavirus disease 2019, or COVID-19, which emerged in late 2019, is a respiratory illness that can cause serious health problems, including death, and poses unique risks in population-dense facilities. *See United States v. Raia*, 954 F.3d 594, 595-96 (3d Cir. 2020). Plaintiffs filed this suit on July 22, 2020, seeking, *inter alia*, to

---

Delegation of Authority and Assignment of Responsibility to Assistant Secretary for Occupational Safety and Health, 77 Fed.Reg. 3912-01 (Jan. 25, 2012).

require OSHA to investigate conditions of the Plant which Plaintiffs believe, if left unabated, pose an imminent danger to the Plant's employees of contracting COVID-19. (Doc. 1). They simultaneously filed a motion for leave to proceed under pseudonym. (Doc. 3). By order dated July 23, 2020, the court scheduled a hearing, and directed the parties to "be prepared to present evidence" on whether the Secretary acted arbitrarily and capriciously in failing to seek an injunction to restrain the Employer from practices, as they relate to COVID-19, that could reasonably be expected to imminently cause death or serious physical harm to employees. (Doc. 6, at 2).

On July 28, 2020, Defendants filed a response to the motion for leave to proceed under pseudonym, indicating that they did not oppose the motion but felt the court should require some evidence beyond Plaintiffs' declarations in order to ensure they had standing. (Doc. 20). Defendants also filed a motion to dismiss for failure to state a claim, (Doc. 23), and a brief in support, (Doc. 24). On July 30, 2020, Defendants filed a motion to stay the hearing scheduled for July 31 pending the disposition of their motion to dismiss, (Doc. 30), which the court denied, (Doc. 33).

The court conducted a hearing on Friday, July 31, 2020, at which both sides appeared and were permitted to present evidence and testimony.[2] At the beginning of the hearing the court granted Plaintiffs' motion for leave to proceed under pseudonym, (Doc. 3), in light of Defendants' concurrence in the motion, as well as Defendants' failure to articulate any good faith basis for challenging Plaintiffs' standing. (Doc. 42, at 11).

At the conclusion of the hearing, the court set a briefing schedule. Plaintiffs filed their post-hearing brief and brief in opposition to the motion to dismiss. (Doc. 43). Defendants filed their post-hearing brief. (Doc. 46). Plaintiffs then filed a reply brief. (Doc. 47).

Defendants separately filed a motion to strike three exhibits from Plaintiffs' brief, (Doc. 44), as well as a brief in support, (Doc. 45). Plaintiffs filed a brief in opposition, (Doc. 48), and Defendants filed a reply brief, (Doc. 49).

On December 2, 2020, Defendants filed a letter informing the court that OSHA had concluded its investigation of the Plant and would not be issuing a citation—that is, it would not be instituting any enforcement proceedings

---

[2] The court notes that, despite its order specifically directing lead counsel to appear in person at the hearing, (Doc. 17), and despite Plaintiffs' indication that "lead counsel for Plaintiffs will be physically present at the courthouse in Scranton," (Doc. 27, at 2), Plaintiffs' lead counsel appeared remotely.

against the Plant under the Act. (Doc. 51). Defendants attached two letters dated December 2, 2020: one addressed to Plaintiffs, (Doc. 51-1), and one addressed to the Plant, (Doc. 51-2). The letter to the Plaintiffs detailed the findings of OSHA's inspection with respect to each of the seven separate items of concern in their complaint, and indicated that if Plaintiffs did not agree with the inspection results, they could contact OSHA's Acting Area Director for clarification or OSHA's Regional Administrator to request an informal review. The letter to the Plant recounted the steps the Plant took in response to the COVID-19 workplace concerns raised and additionally suggested several other practices the Plant might consider implementing to control exposure to COVID-19.

On December 8, 2020, Plaintiffs responded with a letter to the court, indicating that they had requested an informal review. (Doc. 52). Plaintiffs also attached a December 7, 2020 letter to OSHA, "object[ing] to the results of [its] inspection." (Doc. 52-1, at 1). In it, Plaintiffs reiterate many of their earlier concerns about the conditions of the Plant, arguing that OSHA did not sufficiently address whether various conditions and policies were sufficiently remedied and that, in concluding certain conditions were acceptable, OSHA chose to ignore the CDC's, and its own, guidance—namely, that "COVID-19 pandemic control requires a multipronged application of evidence-based

strategies" that include, *inter alia*, "universal face mask use," and "physical distancing." (Doc. 52-1, at 2) (quoting Honein et al., *Summary of Guidance for Public Health Strategies to Address High Levels of Community Transmission of SARS-CoV-2 and Related Deaths, December 2020* (Dec. 4, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/mm6949e2.htm#:~:text=These%20strategies%20include%201)%20universal,)%20promptly%20identifying%2C%20quarantining%2C%20and). Plaintiffs' filings also cite new declarations by two of the Plaintiffs, (Doc. 52-2; Doc. 52-3), which generally state that "the dangerous conditions at [the Plant] remain substantially unchanged." (Doc. 52, at 2).

On January 12, 2021, Defendants filed a suggestion of mootness, (Doc. 53), to which they attached a letter from OSHA's Regional Administrator, also dated January 12, 2021, (Doc. 53-1). In it, the Regional Administrator addressed the Plaintiffs' various areas of concern outlined in their December 7, 2020 letter seeking review and, ultimately, affirmed the determination of the Area Director that no citation to the Plant would issue. The letter indicated that the Regional Administrator's decision was "final and not subject to review." (Doc. 53-1, at 2).

After requesting and receiving an extension of time to reply, Plaintiffs filed a response to the suggestion of mootness on February 1, 2021. (Doc. 56).

## II.   DISCUSSION

### a. *Mootness*

Initially, the court must address Defendants' suggestion of mootness. Defendants contend that, in light of OSHA's completion of its investigation of the Plant, as well as the finality of the Regional Administrator's decision affirming OSHA's decision not to issue a citation, Plaintiffs have no avenue for further administrative review and this action is moot. Defendants assert that, OSHA's decision not to initiate enforcement proceedings is a "classic example of the prosecutorial discretion committed to the Secretary" and "unreviewable" by courts. (Doc. 53, at 4) (quoting *Reich v. OSHRC*, 998 F.2d 134, 141 (3d Cir. 1993). As a result, Defendants aver that this action must be dismissed as moot since Plaintiffs disagreement with OSHA's decision does not present a live controversy in that there is no relief the court can provide.

In their response, Plaintiffs cite updated guidance issued by OSHA on January 29, 2021, upon instruction from President Biden,[3] arguing that it "bears directly on some of the core issues in this case," and that there is "every reason to believe that if OSHA were to conduct a new inspection of the [Plant] in light of the Updated Guidance, it would come to a different conclusion than it did in early December 2020." (Doc. 56, at 3). Plaintiffs additionally argue that OSHA's decision to "formalize" its "arbitrary and capricious failure to intervene" in the Plant's practices does not moot this case, since Section 13(d) of the Act permits the court to order "further relief as may be appropriate." (Doc. 56, at 4). Plaintiffs suggest this relief should include, *inter alia*, a "new inspection." (Doc. 56, at 4). Alternatively, Plaintiffs contend the court should adjudicate this action under the, capable of repetition yet evading review, exception to the mootness doctrine "to prevent OSHA's continued failure to act in the future." (Doc. 56, at 4).

Both parties miss the mark. While the court agrees with Plaintiffs that this action is not moot, it is not for the reasons that Plaintiffs cite. The issue presented to this court from the start remains whether this court has jurisdiction over a complaint in mandamus pursuant to Section 13(d) of the

---

[3] Exec. Order on Protecting Worker Health and Safety (Jan. 21, 2020), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/21/executive-order-protecting-worker-health-and-safety/.

Act where the Secretary has not received a recommendation to take legal action from an OSHA inspector. It remains the fact that an OSHA inspector has not yet made such a recommendation and OSHA's intervening actions in concluding its inspection and issuing a final decision not to cite the Plant means only that such a recommendation will not occur in this case. The case and controversy presented to the court, however, was never dependent upon there being a possibility of such a recommendation.

It remains true that if Plaintiffs' reading of Section 13(d) of the Act is correct, they are still able to obtain the relief they seek regardless of the status of OSHA's inspection. That is, according to Plaintiffs theory of Section 13(d), any time the Secretary arbitrarily and capriciously fails to seek relief under the Act—which Plaintiffs argue remains ongoing—workers are able to bring an action for a writ of mandamus compelling the Secretary to ask a court to require the employer—here, the Plant—to abate the imminent danger. In other words, Plaintiffs would be able to petition a court for relief whenever the Secretary arbitrarily and capriciously fails to take action under the Act, regardless of whether OSHA believes action should be taken.

If, however, Defendant's reading of Section 13(d) of the Act is correct in that workers may not seek relief in federal court unless and until the Secretary arbitrarily and capriciously declines a recommendation by an

OSHA inspector to take action, then OSHA's recent decision not to issue a

citation to the Plant does not change the fact that Plaintiffs were never

entitled to relief under Section 13(d), since no recommendation was denied

by the Secretary.

Therefore, because OSHA's recent actions do not alter the court's

ability to grant Plaintiffs the relief which they seek, mootness does not apply.

### b. *Motion to Strike*

In this motion, Defendants seek to have three exhibits stricken from

the record that Plaintiffs' attached to their post-hearing brief: (1) an unsworn

declaration from plaintiff Jane Doe II, (Doc. 43-2); (2) a declaration from an

anonymous non-plaintiff, identified only as a mechanic for the Plant, (Doc.

43-3); and (3) a declaration from Melissa J. Perry, Sc.D., M.H.S, (Doc. 43-

4), "an epidemiologist who has studied meat-processing plants." (Doc. 43, at

15).

Defendants note that, despite having had the opportunity to present

these witnesses at the hearing, none were called and, further, Plaintiffs did

not seek leave of court to attach these declarations to their brief. Defendants

argue that they will be prejudiced by the inclusion of these documents in the

record because they were not afforded an opportunity to object or to cross-

examine these witnesses. In particular, they argue they would be prejudiced

by Dr. Perry's declaration because she is offered as an expert. Defendants emphasize that the Federal Rules provide strict safeguards on expert testimony to ensure its accuracy and that the opposing party's rights are safeguarded, and they argue that Plaintiffs cannot circumscribe these rules by simply attaching this testimony in the form of a declaration to a brief.

The court agrees and will **GRANT** the motion to strike. (Doc. 44). The court's July 23, 2020 order specifically directed the parties to "be prepared to present evidence." (Doc. 6, at 2). Significantly, Plaintiffs indicated their intent to do so via a notice of "Plaintiffs' Proposed Plans for [July] 31 Hearing" in which they stated that they planned to produce witnesses by videoconference. (Doc. 27, at 2). Nevertheless, Plaintiffs did not attempt to produce testimonial evidence at the hearing and, instead, seek to do so via the exhibits at issue. Although Plaintiffs argue that some of the information in the exhibits was "not available at the time of the hearing," (Doc. 48, at 2), Plaintiffs did not seek to make arrangements with the court for post-hearing submission of this evidence.

Having had and declined the opportunity to produce this evidence in open court where it could be subject to cross examination by Defendants, the court agrees with Defendants that to permit Plaintiffs to submit it as an attachment to a brief without leave of court would be prejudicial to

Defendants. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 895 (1990) (holding the district court did not abuse its discretion in refusing to admit affidavits submitted after a hearing on a motion for summary judgment); *Drippe v. Tobelinski*, 604 F.3d 778, 783 (3d Cir. 2010) (observing district courts are afforded "great deference with regard to matters of case management).

In any case, to the extent the exhibits would aid the court, it would be solely with respect to the factual allegations about the conditions of the Plant and whether they constitute an imminent danger—an issue the court does not reach in light of its disposition on the motion to dismiss. Accordingly, the three exhibits, (Doc. 43-2; Doc. 43-3; Doc. 43-4), are **STRICKEN FROM THE RECORD**.[4]

### c. *Plaintiffs' Claim under 29 U.S.C §662(d)*

The Occupational Safety and Health Act of 1970, 29 U.S.C. §651 *et seq*. was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve

---

[4] Defendants note that one of the declarations, (Doc. 43-2), was not signed under penalty of perjury. Plaintiffs acknowledge this error and have attempted to remedy it by submission of a supplemental declaration, (Doc. 50). For the same reasons, it will likewise be **STRICKEN FROM THE RECORD**.

our human resources." 29 U.S.C. §651(b). Thus, "Congress authorized the Secretary of Labor to set mandatory occupational safety and health standards applicable to all businesses affecting interstate commerce . . . ." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992).

The Plant is an institutional food services provider that produces pre-portioned frozen meat products for schools, universities, nursing homes, and military bases. Justice at Work is a non-profit legal organization based in Pennsylvania that has been designated by Plaintiffs to serve as their representative. Jane Does I, II, and III are employees of the Plant, who package raw meat into containers.

Plaintiff's forty-nine-page complaint contains approximately twenty-six pages of background and eighteen pages of factual allegations relating to OSHA's response to the COVID-19 pandemic, as well as the risks of the COVID-19 to the employees at the Plant. Plaintiffs allege that, since the beginning of March, Plant employees have complained to their bosses and to OSHA about conditions at the Plaint which, they fear, substantially increase the risk of spread of COVID-19. Among other things, Plaintiffs contend that the Plant has configured the production line such that employees cannot socially distance; has only occasionally provided masks, expecting employees to provide their own; has failed to provide adequate

handwashing opportunities or inform workers of potential exposures; and has rotated in workers from other facilities in a way that increases the risk of spread.

Plaintiffs allege that, in early April 2020, a non-plaintiff employee alerted OSHA to the conditions at the Plant, (Doc. 2-1, at 40), but OSHA dismissed the complaint based upon the Plant's response. Without knowledge of the April 2020 complaint, Plaintiffs filed their own complaint with OSHA, which they call the "Imminent Danger Complaint," detailing their concerns about Plant conditions, including their allegations about the lack of safe personal protective equipment and the failure to slow production line speeds, maintain social distancing, or provide hand-washing breaks and facilities. (Doc. 2-3, at 2). Plaintiffs closed by asking that OSHA "investigate this facility immediately." (Doc. 2-3, at 6).

Plaintiffs contend this complaint met all requirements of a formal imminent danger notice under Section 8(f)(1) of the Act, 29 U.S.C. §657(f)(1), which states,

> Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice,

> and shall be signed by the employees or
> representative of employees, and a copy shall be
> provided the employer or his agent no later than at
> the time of inspection, except that, upon the request
> of the person giving such notice, his name and the
> names of individual employees referred to therein
> shall not appear in such copy or on any record
> published, released, or made available pursuant to
> subsection (g) of this section. . . .

29 U.S.C. §657(f)(1). This Subsection continues, indicating what must occur

after such a request is received:

> If upon receipt of such notification the Secretary
> determines there are reasonable grounds to believe
> that such violation or danger exists, he shall make a
> special inspection in accordance with the provisions
> of this section as soon as practicable, to determine if
> such violation or danger exists. If the Secretary
> determines there are no reasonable grounds to
> believe that a violation or danger exists he shall notify
> the employees or representative of the employees in
> writing of such determination.

*Id.*

Thus, ultimately, the Secretary must either make a special inspection

"as soon as practicable," or notify the employee of his determination that

there are no reasonable grounds to believe a violation or danger exists. *Id.*

Despite having received such a request, Plaintiffs argue in their complaint

that OSHA has neither conducted a special inspection nor notified them of a

determination that no reasonable grounds exist. Plaintiffs assert that they

have followed up with OSHA on no less than five occasions; however, OSHA

has provided little information with respect to the status of its investigation. Plaintiffs also make the concerning allegation that their counsel was told in a June 1, 2020 phone conversation with Assistant Area Director Susan Giguere that OSHA will not treat any complaint regarding COVID-19 as an imminent danger complaint. (Doc. 2-2, at 2-3).

Due to the continued signals to the Plant that it need not make changes despite OSHA's awareness of the safety issues present since April 2020, Plaintiffs contend that their only relief was to file the present complaint in mandamus pursuant to Section 13(d) of the Act, 29 U.S.C. §662(d). Plaintiffs argue that they have "done everything else they can do to bring the dangers at issue to OSHA's attention," and yet OSHA has failed to acknowledge the clear and imminent danger posed by COVID-19 to the Plant's workers. This, Plaintiffs argue, is arbitrary and capricious and therefore they are entitled to petition the court in mandamus under Section 13(d) in order to obtain immediate relief from the imminent dangers that they face. Despite framing their complaint as seeking mandamus relief, however, Plaintiffs seek additional specific relief as follows:

> a. Disclose to Plaintiffs and this Court all communications to and from Maid-Rite regarding this matter;
> b. Conduct an immediate onsite inspection of the Plant; and

> c. Engage in all other actions and proceedings necessary to resolving all the imminent dangers identified in th[e] Complaint, inadequate personal protective equipment, including inadequate social distancing on production lines, insufficient opportunities to engage in personal hygiene, improper incentives to continue attending work when sick, and insufficient information about workers' exposure to COVID-19 at the plant.

(Doc. 1, at 47).[5]

Mandamus provides a "drastic remedy that a court should grant only in extraordinary circumstances." *Hahnemann Univ. Hosp. v. Edgar,* 74 F.3d 456, 461 (3d Cir. 1996) (internal citations and quotation marks omitted).

> As the writ is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue. First, the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites

---

[5] After learning that OSHA had conducted an onsite inspection on July 9, 2020, Plaintiffs in their post-hearing brief ask that Defendants be required to conduct "another onsite inspection . . . this time unannounced." (Doc. 43, at 30). Plaintiffs, however, have not amended their Complaint and may not do so via a brief in opposition to a motion to dismiss. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted)). Accordingly, the court will proceed on the basis of the relief sought in the Complaint—a portion of which is now moot, given an onsite inspection has been done.

> have been met, the issuing court, in the exercise of
> its discretion, must be satisfied that the writ is
> appropriate under the circumstances.

*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004) (internal

citations and quotation marks omitted).

Before the court reaches the issue of the merits of the writ, however, it

must satisfy itself that this action is properly before this court. Defendants, in

their filings, generally argue that the Complaint should be dismissed because

Plaintiffs cannot establish the prerequisites to filing a claim under Section

13(d).[6] Namely, Defendants note that the Secretary has not received a

recommendation from an OSHA inspector that an imminent danger exists

and that he should seek an injunction and, as a result, they argue the court

lacks jurisdiction to review whether the Secretary has acted arbitrarily or

capriciously in failing to seek that recommended relief. Defendants

emphasize that this is a first-of-its-kind lawsuit and that no court has ever

---

[6] Defendants initially argued that the case should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In their post-hearing brief, Defendants argue that the case should also be dismissed for lack of subject matter jurisdiction.

The court finds that it is does indeed possess federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, insofar this case presents a question under federal law—to wit, 29 U.S.C. §662(d). However, as explained *infra*, the court concludes that it must dismiss this matter because the limited circumstances under which a district court has jurisdiction over a Section 13 action are not present here.

concluded that Section 13(d) of the Act permits private litigants to challenge how OSHA conducts its investigations, evaluates complaints, or handles enforcement actions.[7]

Defendants observe that the Secretary has broad prosecutorial discretion to enforce the Act and, with limited exceptions, nearly all enforcement actions are heard by the Occupational Safety and Health Review Commission ("OSHRC"). Cases are heard by an OSHRC administrative law judge, whose decision may be reviewed by the full OSHRC. Only after exhausting this administrative process is it possible to petition a court of appeals.

Section 13 of the Act, however, provides a limited vehicle by which the Secretary may petition a district court without delay. Defendants describe the Section 13 process as follows. Under Section 13(a), where conditions exist in a place of employment that "could reasonably be expected to cause death or serious physical harm" before it can be eliminated though other enforcement procedure in the Act, the Secretary may seek an order from a district court requiring the employer to eliminate the imminent danger. 29 U.S.C. §662(a). Section 13(c) states that, if an OSHA inspector concludes

---

[7] Defendants state that the Secretary has only sought an injunction under Section 13 of the Act on three occasions.

that such imminent danger conditions exist in a place of employment, "he shall inform the affected employees and employers of the danger and that he is recommending to the Secretary that relief be sought." 29 U.S.C. §662(c).

If, however, the Secretary "arbitrarily or capriciously fails to seek relief under [] [S]ection [13], any employee who may be injured by reason of such failure, or the representative of such employees, might bring an action against the Secretary in the United States district court for the district . . . for a writ of mandamus to compel the Secretary to seek such an order and for such further relief as may be appropriate." 29 U.S.C. §662(d). Thus, Defendants contend that Section 13(d) only provides the ability for an employee to seek mandamus to force the Secretary to do that which he arbitrarily and capriciously refused to—*i.e.*, to file a petition in the district court seeking to restraining the imminent danger. Parenthetically, in light of Defendants' December 2, 2020 letter, this process will not play out in the present case since OSHA has concluded its investigation and has indicated that it will not recommend that the Secretary take action.

As outlined at the hearing, Defendants indicate that there are several internal steps in the Section 13(d) investigatory process. When OSHA receives a complaint, an OSHA inspector, also known as Compliance Safety

and Health Officer ("CSHO"), *see* 29 C.F.R. §1903.13, makes a determination as to whether an imminent danger exists. If the inspector determines that there is no imminent danger, the Section 13 process ends, but OSHA may continue to investigate, issue citations, and seek the employer's compliance.

If, however, the inspector determines there is an imminent danger, the inspector must inform the affected employees and employer and recommend to the Secretary that he seek injunctive relief against the employer. At that point, Defendants assert the Secretary can either agree and file suit or disagree. However, Defendants argue, it is only where the Secretary disagrees and arbitrarily or capriciously rejects the recommendation to take action that an employee can step in an seek judicial intervention.

In this case, Defendants indicate that OSHA's Wilkes-Barre Area Office received two complaints in April and May 2020 alleging that the Plant was not taking steps to protect employees from the spread of COVID-19. Defendants state that OSHA considered the two complaints together as one non-formal complaint, which it sent to the Plant.[8] The Plant responded and

---

[8] Defendants explain that, "[t]ypically, non-formal complaints are initially handled through an 'inquiry,' under which OSHA notifies the employer of the complaint and asks for a response," after which a formal inspection may occur depending upon the employer's response. (Doc. 24, at 20). At the hearing, Ms. Giguere testified that whether a complaint is

sent documentation detailing its efforts to control the virus. Area Director Mark Stelmack ("Stelmack") and Assistant Area Director Susan Giguere ("Giguere") reviewed the case and, in late May 2020, determined that a formal investigation should be opened. OSHA opened the formal investigation on June 2, 2020, and assigned the case to CSHO Shannon Warner, who obtained photographs and documents from the Plant, interviewed approximately fifteen to twenty employees and, ultimately, conducted an onsite inspection of the Plant on July 9, 2020. Mr. Stelmack, Ms. Giguere, and Ms. Warner conferred on the findings and, after taking into consideration OSHA's internal guidance and policies, concluded that no imminent danger was present at the Plant.

At the hearing, Mr. Stelmack explained that they took into account that the Plant had implemented various mitigating factors such as sanitation procedures, staggering work breaks, providing for social distancing in the break rooms, installing additional hand sanitizing stations, purchasing and distributing face masks and shields for employees, requiring temperature checks of everyone entering the Plant, and instructing those feeling ill not to

---

considered an imminent danger complaint depends upon the danger alleged and is determined by the OSHA investigator—not the complainant. Additionally, she explained when OSHA deems a complaint to be an imminent danger complaint, it is responded to "very quickly," and an inspection is typically done within one day. (Doc. 42 at 128).

come to work. He also noted that they considered that the Plant had not had any reported COVID-19 for over a month.

Having found no imminent danger and, thus, having made no recommendation to the Secretary, Defendants argue that the Section 13 process has concluded. Nevertheless, they state that OSHA's inspection remained ongoing and that, as of the August 2020, it had yet to determine whether the Plant has violated any of the Act's provisions or OSHA's standards, or whether any citations would be issued. *See* Section 8 of the Act, 29 U.S.C. §675 (detailing the procedures by which OSHA conducts investigations outside of instances of imminent danger).[9] Ultimately, per the December 2, 2020 letter, OSHA determined that the Plant had not and that no citation would be issued.

Defendants assert that Congress fashioned Section 13 this way for good reason. By requiring that, under Section 13(d), a trained CSHO first make a recommendation to the Secretary and that he arbitrarily and capriciously reject it before court intervention is permitted, "Congress set an intentionally high bar to limit this private right to only the cases that are most

---

[9] Significantly, Section 8(f)(1) of the Act provides that if, after receiving an employee complaint, "the Secretary determines there are no reasonable grounds to believe that a violation or danger exists *he shall notify the employees or representative of the employees in writing of such determination*." 29 U.S.C. §657(f)(1) (emphasis added).

likely to be meritorious, while avoiding the avalanche of cases that a broader right would inevitably bring." (Doc. 24, at 11).

In response, Plaintiffs argue, *inter alia*, that this interpretation of Section 13(d) is implausible because it would cabin the Secretary's authority to protect workers from imminent danger if an inspector were allowed to end the Section 13 process by deciding, albeit in consultation with the area director and regional administrator, that no imminent danger exists. Plaintiffs contend that nothing in Section 13 specifically states that the Secretary may only seek a court order after receiving a recommendation from an inspector or that an employee can only invoke Section 13(d) if the Secretary fails to heed the recommendation. They also note that Section 13 does not contain any reference to the area director or regional administrator. Moreover, Plaintiffs argue that OSHA "cannot explain why Congress would limit the authority of a politically accountable official based on recommendations received from his subordinates." (Doc. 43, at 10).

Plaintiffs then pivot to the investigation here and assert that the manner in which OSHA conducted it was arbitrary in capricious. This is so, they argue, because OSHA determined, before conducting an onsite inspection, that the conditions listed in the complaint did not rise to an imminent danger.

- 24 -

Plaintiffs would read Section 13 to require that OSHA conduct a prompt onsite inspection upon receipt of any complaint alleging an imminent danger.

As is apparent then, the crux of the issue before this court involves the parties' competing interpretations of Section13(d). In full, Section 13 of the Act reads as follows:

**(a)  Petition by Secretary to restrain imminent dangers; scope of order**

The United States district courts shall have jurisdiction, upon petition of the Secretary, to restrain any conditions or practices in any place of employment which are such that a danger exists which could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this chapter. Any order issued under this section may require such steps to be taken as may be necessary to avoid, correct, or remove such imminent danger and prohibit the employment or presence of any individual in locations or under conditions where such imminent danger exists, except individuals whose presence is necessary to avoid, correct, or remove such imminent danger or to maintain the capacity of a continuous process operation to resume normal operations without a complete cessation of operations, or where a cessation of operations is necessary, to permit such to be accomplished in a safe and orderly manner.

**(b)  Appropriate injunctive relief or temporary restraining order pending outcome of enforcement proceeding; applicability of Rule 65 of Federal Rules of Civil Procedure**

Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order pending the outcome of an enforcement proceeding pursuant to this chapter. The proceeding shall be as provided by Rule 65 of the Federal Rules, Civil Procedure, except that no temporary restraining order issued without notice shall be effective for a period longer than five days.

**(c)   Notification of affected employees and employers by inspector of danger and of recommendation to Secretary to seek relief**

Whenever and as soon as an inspector concludes that conditions or practices described in subsection (a) exist in any place of employment, he shall inform the affected employees and employers of the danger and that he is recommending to the Secretary that relief be sought.

**(d)   Failure of Secretary to seek relief; writ of mandamus**

If the Secretary arbitrarily or capriciously fails to seek relief under this section, any employee who may be injured by reason of such failure, or the representative of such employees, might bring an action against the Secretary in the United States district court for the district in which the imminent danger is alleged to exist or the employer has its principal office, or for the District of Columbia, for a writ of mandamus to compel the Secretary to seek such an order and for such further relief as may be appropriate.

29 U.S.C. §662(a)-(d).

Upon careful review, the court agrees with Defendants' reading of Section 13(d). If the court were to read Section 13(d) in isolation, it would

- 26 -

appear that employees are entitled to petition a court anytime that they feel they face imminent danger and at least make the argument that the Secretary's lack of prompt action is arbitrary and capricious. It is well-established, however, that statutes must be read as a whole. *See United States v. Morton*, 467 U.S. 822, 828 (1984) ("We do not, however, construe statutory phrases in isolation; we read them as a whole."); *see also Stafford v. Briggs*, 444 U.S. 527, 536 (1980) ("And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law." (quoting *Brown v. Duchesne*, 19 How. 183, 194 (1857)).

When Section 13(d) is read in the context of Section 13 as a whole, it is apparent that Section 13(d) affords employees relief only in those instances where the Secretary has been presented with a finding of imminent danger by an OSHA inspector and has arbitrarily and capriciously rejected the recommendation to take legal action. Indeed, the text of Section 13(d) itself suggests that this is the correct reading with its use of the phrase, "If the Secretary arbitrarily or capriciously fails to seek relief *under this section* . . . .," referring to the prior subsections. Those prior subsections—in particular, Subsections 13(a) and (b)—plainly indicate that the Section 13

process begins when an OSHA inspector makes a finding of imminent

danger and recommends that the Secretary seek court intervention.

While Plaintiffs balk at this reading of Section 13(d), arguing that the

result would be an OSHA inspector, in finding no imminent danger, could

cabin the power of the Secretary, this does not change the plain language of

the Act.[10] Heads of administrative agencies can and frequently do delegate

their duties and decision-making authority to subordinates within their

agency. *See* 5 U.S.C.§302(b) (permitting the head of an agency to delegate

authority to subordinate officials). Moreover, as Defendants point out,

nothing in the Act prevents an OSHA inspector's superiors from determining

that an imminent danger exists, nor does it prevent the inspector from making

a recommendation directly to the Secretary.

Case law, albeit sparse, supports this reading. While, no court has ever

confronted a complaint in mandamus under Section 13(d), as Defendants

note, the analysis of Section 13 by two circuits that have had occasion to

address it suggests this is the correct reading. *See Marshall v. Whirlpool

Corp.*, 593 F.2d 715, 720 (6th Cir. 1979), *aff'd*, 445 U.S. 1 (1980);[11] *Marshall*

---

[10] As noted above, despite the conclusion of the Section 13 process, the Act suggests the investigatory process continues under Section 8.

[11] The Sixth Circuit described the Section 13 process seriately as follows: "The Act also provides for special procedures which can be taken when an employee fears that an 'imminent danger' exists at the workplace.

- 28 -

*v. Daniel Constr. Co.*, 563 F.2d 707, 711 (5th Cir. 1977) ("Employees are entitled to petition the federal district court for a writ of mandamus against the Secretary if he arbitrarily or capriciously fails to seek the injunctive relief *requested by the OSHA inspector*." (emphasis added)).[12]

Plaintiffs cite the recent case *Rural Cmty. Workers*, 2020 WL 2145350, at *8, for the court's statement that, "if OSHA fails to act quickly [on

---

An employee who fears imminent danger to himself or to fellow employees must notify the Secretary [*i.e.*, OSHA] of the danger. . . . If the OSHA inspector believes [] that there exists imminent danger of death or serious physical harm and that the normal enforcement channels, are inadequate, the OSHA inspector must recommend to the Secretary that immediate injunctive relief against the dangerous practices or conditions be sought in an applicable federal court. 29 U.S.C. §662(a), (b), (c). Employees have the right to petition a federal district court for a writ of mandamus against the Secretary if he wrongfully fails to seek injunctive relief. 29 U.S.C. §662(d)." *Whirlpool Corp.*, 593 F.2d at 720.

[12] With respect to Section 13, the Fifth Circuit additionally stated, "Before an imminent danger is enjoined, however, four independent judgments must be integrated in the decision-making calculus: (1) The Secretary must conclude that the worker's notice provides reasonable grounds to believe that an imminent danger exists. (2) An OSHA inspector must conclude upon inspecting the workplace that the danger cannot be prevented through normal enforcement procedures but requires immediate injunctive relief and recommend to the Secretary that he seek relief. (3) The Secretary must conclude that the inspector is correct and proceed to federal court. (4) A federal district court must find that an imminent danger exists at the worksite such that requires immediate injunctive relief. At no point does the Act permit workers to make a determination that a dangerous condition exists in fact . . . ." *Daniel Constr. Co.*, 563 F.2d at 711.

information about safety measures that OSHA sought from the facility at issue], [employees] have a remedy: they may receive emergency relief through OSHA's statutory framework." *Id.* However, even if that case were binding here, Plaintiffs ignore the court's subsequent acknowledgement that there are certain prerequisites to being able to obtain such relief. *See id.* ("Granted, there may be some delay before Plaintiffs can invoke this procedure . . . ."). Thus, both the rules of statutory interpretation and case law suggest that Defendants' reading of Section 13(d) is the correct one.

In this case, then, Plaintiffs' Complaint is not properly before this court as no OSHA inspector has found that the Plant presents an imminent danger to its employees and, consequently, no recommendation had been made to the Secretary to take action pursuant to Section 13. Thus, because Section 13 does not grant courts' jurisdiction over imminent danger complaints at just any stage of the proceeding, but rather only when the specific aforementioned actions have been taken by the OSHA inspector and the Secretary, and because the OSHA inspector and the Secretary have not taken those actions here, Plaintiffs have failed to state a Section 13(d) claim and dismissal of the Complaint is required.[13] Put simply, the court cannot

---

[13] As noted, OSHA has concluded its investigation, elected not to engage in enforcement proceedings or issue citations, and provided written

review the Secretary's decision for arbitrariness or capriciousness where there has been no Secretarial decision. Accordingly, Defendants' motion to dismiss, (Doc. 23), is **GRANTED**, and the court will **DISMISS** the Complaint, (Doc. 1).

Having determined that the prerequisites a Section 13(d) action are not met here and, thus, that the court does not have jurisdiction, the court does not reach the parties' arguments with respect to whether Defendants' purported failure to act under Section 13 is arbitrary and capricious. Nevertheless, although the court is constrained to dismiss this action, the court notes that Plaintiffs have raised some troubling claims, including that their representative was told by an OSHA employee that OSHA refuses to treat any complaint regarding COVID-19 as an imminent danger complaint and, *inter alia*, that the Plant has configured the production line such that employees cannot socially distance.

With respect to the former allegation, at the hearing, the court heard testimony from Mr. Stelmack and Ms. Giguere, who explained that there is no such blanket policy. (Doc. 42, at 163, 179). Ms. Giguere, who was identified as the OSHA employee that spoke with Plaintiffs' representative

---

notice of its decision to Plaintiffs. Consequently, the Section 13 process has concluded.

and who purportedly made that statement, testified that all imminent danger complaints are "always taken on a case-by-case basis," which is how she has handed them for the past thirty-two years. ([Doc. 42, at 163](#)). The court found this testimony credible with respect to Defendants' assertion that it has no blanket policy regarding COVID-19.

With respect to the allegations about conditions of the Plant, in its filings, OSHA has related many of the safety measures and policies that the Plant implemented in response to COVID-19, including requiring employees to wear gloves, hair nets, masks, and face shields, and spending $30,000 for an industrial cleaning firm to clean and sanitize the Plant. ([Doc. 2-1, at 4](#), 7).[14] It reiterated these remedial actions in its December 2, 2020 letter to the Plant. ([Doc. 51-2](#)). With that being said, however, in light of the length of time that it has taken for OSHA to respond to Plaintiffs' concerns and to conduct the onsite inspection, the court has serious concerns about whether OSHA is in fact fulfilling its duty to ensure workers' rights to "safe and healthful working conditions," [29 U.S.C. §651(b)](#), particularly given the nature of the

---

[14] Although Plaintiffs contend that OSHA should not rely on the word of an employer, this argument is merely a disagreement with the credibility of the Plant's responses, which OSHA has apparently relied upon. At this juncture, the court has no authority to second-guess the judgment of OSHA employees with respect to their investigatory techniques and their resulting conclusions.

work Plaintiffs are employed to do, which involves the processing and packaging of raw meat for schools, universities, nursing homes, and military bases.

Additionally, the court shares Plaintiffs' concern that there is no apparent remedy for employees in the event that an OSHA investigator declines to find imminent danger or if the investigation takes an excessive length of time before a finding of imminent danger is made. Plaintiffs' valid concerns about continuing to be subject to the apparent imminent danger in the interim are well taken. Ultimately, however, Plaintiffs' remedy lies with the Legislature and not the courts if there is to be a mechanism by which employees can challenge an OSHA investigator's finding of no imminent danger under Section 13(d).

Notably, although not a substitute for court-ordered relief, the Act's regulations do provide for certain whistleblower protections which entitle employees, among other things, to refuse to work where they genuinely and reasonably believe an imminent danger exists *See* 29 C.F.R. §1977.12(b)(2);[15] *see also* *Whirlpool Corp. v. Marshall*, 445 U.S. 1 (1980)

---

[15] This subsection states, "[O]ccasions might arise when an employee is confronted with a choice between not performing assigned tasks or subjecting himself to serious injury or death arising from a hazardous condition at the workplace. If the employee, with no reasonable alternative, refuses in good faith to expose himself to the dangerous condition, he would

(discussing this regulation and noting that it "clearly conformed" to the Act's fundamental objective of preventing death and serious injuries and was an appropriate aid to the full effectuation of the Act's general duty clause). As it stands, however, Plaintiffs cannot receive the relief they request from this court and therefore the court has no option but to dismiss the Complaint.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, (Doc. 23), is **GRANTED** and Plaintiff's complaint, (Doc. 1), is **DISMISSED**. Additionally, Defendants' motion to strike, (Doc. 44), is **GRANTED** and the exhibits attached to Plaintiffs' post-hearing brief, (Doc. 43-2; Doc. 43-3; Doc. 43-4; Doc. 50), are **STRICKEN FROM THE RECORD**.

s/*Malachy E. Mannion*
**MALACHY E. MANNION    United States District Judge**

**DATE: March 30, 2021**
20-1260-01

be protected against subsequent discrimination. The condition causing the employee's apprehension of death or injury must be of such a nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a real danger of death or serious injury and that there is insufficient time, due to the urgency of the situation, to eliminate the danger through resort to regular statutory enforcement channels. In addition, in such circumstances, the employee, where possible, must also have sought from his employer, and been unable to obtain, a correction of the dangerous condition." 29 C.F.R. §1977.12(b)(2).